## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ISLAND JAY, INC, a Florida
corporation,

    Plaintiff,

v.

MYLOCKER.COM, L.L.C., a
Michigan limited liability company,

    Defendant.

CASE NO:
HON:
MAGISTRATE:

ANTHONY L. DELUCA, P.L.C.
Anthony DeLuca (P64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905, phone
(313) 821-5906, fax
anthony@aldplc.com

## COMPLAINT AND JURY DEMAND

Plaintiff Island Jay, Inc. ("Island Jay" or "Plaintiff"), states as follows for its Complaint against MYLOCKER.COM, L.L.C., ("MyLocker" or "Defendant").

### I. SUMMARY OF THE ACTION

1. Plaintiff has continuously been engaged in the t-shirt business throughout the United States of America, and beyond, since 2013. Plaintiff's business includes the creation and worldwide sales of tropical themed t-shirts and tank tops featuring all original trademarks, trade names, and service marks, including: "Island Jay," "If I Can't Wear Flip Flops I Don't Want 2 Go," "Not a Worry in the World," "I'm the Cabana Boy," and "I'm Not Waiting Til 5!" ("collectively, the "Marks"). As a result of these activities, Plaintiff has acquired exclusive

rights in the Marks. Since 2013, Plaintiff has invested a considerable amount of time, energy, and capital building the success of the Marks.

2. Defendant has been infringing upon, and, despite being notified that it is infringing upon the Marks, and despite promising to cease and desist any further infringement of the Marks, continues to infringe upon Plaintiff's rights in the Marks.

## II. PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is a Florida corporation, with its principal place of business located in Oldsmar, Florida. Plaintiff is the successor of Jason Guarino and Alistair Mitchell, the principals of Island Jay, Inc., and Mango Gear, Inc. (a former Florida corporation) all of whom assigned or granted Plaintiff an exclusive license to utilize the Marks. The terms "Plaintiff" and "Island Jay" refer to the present Plaintiff, as well as its predecessors, depending on the place and time of the particular allegations stated herein.

4. Upon information and belief, Defendant MYLOCKER.COM, L.L.C., is a Michigan limited liability company, with its principal place of business located at 1300 Rosa Parks Blvd, Detroit, Michigan 48216.

5. Plaintiff's claims are brought for false designation of origin and false descriptions in violation of § 43(a) of the Trademark Act of 1946 (the "Lantham Act"), 15 U.S.C. § 1125(a); federal trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114(1); for violation of § 3(1) of the Michigan Consumer Protection Act, MCL § 445.903(1); for common law trademark and trade name infringement; for common law unfair competition and dilution; and for common law unjust enrichment.

6. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to § 39 of the Lantham Act, 15 U.S.C. § 1121(a); 28 U.S.C. § 1331, because Plaintiff's claims involve a federal question; 28 U.S.C. § 1338(a), because Plaintiff's claims involve trademark infringement; and 28 U.S.C. § 1367(a), because Plaintiff's state law claims are related to its trademark claims against Defendant and arise out of the same case and controversy.

7. This Court has jurisdiction over Defendant because its does business in this judicial district, is engaged in advertising, promoting, distributing, and selling products and services within this judicial district, and is subject to personal jurisdiction in this judicial district.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c).

### III. BACKGROUND

#### Plaintiff's Use and Adoption of the Marks

9. Plaintiff is a successful online business that primarily manufactures and sells high quality tropical themed tank tops and t-shirts worldwide.

10. Plaintiff and its predecessors have engaged in the business of selling tropical themed merchandise since 2013.

11. Since 2013, and continuing uninterrupted through the present day, Plaintiff has used the "Island Jay" mark and name to identify the source of its original merchandise to distinguish it from the products of others.

12. On May 2, 2013, Mr. Guarino filed a trademark application for the "Island Jay" mark with the USPTO. On December 17, 2013, the "Island Jay" mark became a federally registered trademark (serial number 85921448).

13. On May 10, 2013, Mr. Guarino filed a trademark application for the "Not A Worry In The World" mark with the USPTO. On December 10, 2013, the "Not A Worry In The World" mark became a federally registered trademark (serial number 85929192).

14. On February 9, 2015, Mango Gear, Inc., filed a trademark application for the "If I Can't Wear Flip Flops I Don't Want 2 Go" mark with the USPTO. On February 23, 2016, the "If I Can't Wear Flip Flops I Don't Want 2 Go" mark became a federally registered trademark (serial number 86528998), which has been, or is in the process of being, assigned to Plaintiff.

15. In 2018, Plaintiff added a line of t-shirts and related goods using the mark "I'm the Cabana Boy." On August 27, 2018, Messrs. Guarino and Mitchell filed a trademark application for the "I'm the Cabana Boy" mark. The mark is currently pending with the USPTO (serial number 88094322).

16. In 2018, Plaintiff added another line of t-shirts and related goods using the mark "I'm Not Waiting Til 5!" On October 19, 2018, Plaintiff filed a trademark application for the "I'm Not Waiting Til 5!" mark. The mark is currently pending with the USPTO (serial number 88161902).

17. Plaintiff sells t-shirts and tank tops featuring the Marks on its website at www.islandjay.com.

18. The t-shirts featuring the Marks are popular and in high demand.

19. Plaintiff has invested substantial effort, time, and money in the Marks and has otherwise made a significant investment in its Marks.

4

20. Long before the acts of the Defendant described in this Complaint, Plaintiff has continuously used the Marks in commerce in the United States on and in connection with its t-shirt business.

21. As a result of this usage, Plaintiff has nationwide common law rights to its Marks that predate Defendant's usage as described herein.

22. To create and maintain goodwill among its customers, Plaintiff has taken substantial steps to ensure that the products containing the Marks are of the highest quality.

**Defendants' Willful Infringement of Plaintiff's Rights in the Marks**

23. Defendant is a printing company that specialized in apparel, providing "on demand" t-shirt printing services.

24. According to Defendant's website (https://www.mylocker.net) Defendant has "over 20 years in the custom apparel business" and has a "state-of-the-art production facility," and "t-Shirts, sweatshirts, and thousands of other products can be personalized with your logo" through their online services.

25. Defendant's services are being used by various unauthorized third parties to print counterfeit goods containing the Marks.

26. Upon information and belief, infringing entities connect their websites to Defendant's online printing services, resulting in an automated process for making counterfeit t-shirts.

27. Upon information and belief, when an order is placed for a counterfeit t-shirt through an unauthorized website, Defendant receives the order, prints the design on the garment, and ships the counterfeit t-shirt to the customer.

28. Plaintiff has been fighting the sale of counterfeit goods bearing the Marks being sold online for years.

29. Typically, Plaintiff is successful in having counterfeit goods removed from unauthorized websites offering counterfeit goods for sale by sending notices to the website owners or hosting companies in the form of a cease and desist letter.

30. However, if and when the infringing unauthorized website refuses to comply, Plaintiff orders a counterfeit product from the website to identify who is actually printing the infringing goods.

31. This is how Plaintiff discovered that Defendant was creating and shipping counterfeit goods containing the Marks.

32. Through this process, Plaintiff was able to discover that Defendant was the primary entity responsible for creating and shipping counterfeit t-shirts containing the Marks from orders placed on unauthorized websites.

33. When Plaintiff discovered that Defendant was creating counterfeit merchandise, Plaintiff made several attempts to contact Defendant to notify Defendant that it was infringing on Plaintiff's Marks.

34. On December 20, 2018, Plaintiff called Defendant at the number listed on its website (877-898-3360) and left a voice message informing Defendant that it was infringing on Plaintiff's Marks. (Exhibit A)

35. December 20, 2018, Plaintiff also sent Defendant an email informing Defendant that it was infringing on Plaintiff's Marks. (Exhibit B)

36. December 20, 2018, Plaintiff received an automated email response from Defendant, acknowledging receipt of Plaintiff's email. (Exhibit C)

37. On December 21, 2018, Plaintiff sent a message to Defendant through Defendant's Facebook account, again informing Defendant that it was infringing on Plaintiff's Marks. (Exhibit D)

38. On December 21, 2018, Plaintiff called Defendant (at 877-898-3360), but was placed on hold and was unable to speak with anyone. (Exhibit E)

39. On January 7, 2019, Plaintiff sent Defendant another message on Defendant's Facebook page, informing Defendant that it was infringing on Plaintiff's Marks. (Exhibit F)

40. On January 7, 2019, Plaintiff called Defendant again (at 877-898-3360) and left another message informing Defendant that it was infringing on Plaintiff's Marks. (Exhibit G)

41. On January 9, 2019, Plaintiff sent a message to Defendant's CEO, Robert Hake, through Linkedin, informing him that Defendant was infringing on Plaintiff's Marks. (Exhibit H)

42. On January 9, 2019, Plaintiff's attorney sent an email to Mr. Hake informing him that Defendant was infringing on Plaintiff's Marks. (Exhibit I)

43. On January 25, 2019, Plaintiff received an email from Defendant's attorney, Matt Novello, who, at that point, engaged in discussions with Plaintiff during which Mr. Novello was made aware of the Marks and Plaintiff's ownership and exclusive rights to use the Marks.

44. Mr. Novello claimed that Defendant "took these matters seriously" and promised that Defendant would stop creating counterfeit goods containing Plaintiff's Marks. (Exhibit I)

45. On February 6, 2019, Mr. Novello called Plaintiff to continue discussing the matter. Mr. Novello reinforced that Defendant would not print any more counterfeit goods containing the Marks. Mr. Novello also stated that Defendant would be discontinuing its relationship with the websites that were offering counterfeit goods containing the Marks.

46. However, after promising not to continue printing t-shirts containing Plaintiff's Marks, Defendant continued printing counterfeit t-shirts containing Plaintiff's Marks.

47. On or about February 13, 2019, Defendant printed and shipped a counterfeit "I'm The Cabana Boy" t-shirt ordered from an unauthorized website. (Exhibit J)

48. On March 18, 2019, Plaintiff's attorney, Michael Gonzalez, sent Defendant a certified cease and desist letter, once again reiterating that Defendant was infringing upon Plaintiff's rights in the Marks. (Exhibit K)

49. During this time, Defendant also infringed on Plaintiff's rights in the Marks by printing and shipping a counterfeit "If I Can't Wear Flip Flops I Don't Want 2 Go!" t-shirt that also contained the "Island Jay" mark. (Exhibit L)

50. On March 28, 2019, Mr. Novello responded to the cease and desist letter in an email to Mr. Gonzalez in which he stated, among other things, that his "clients have disabled all connections to" one of the websites offering counterfeit merchandise. Significantly, Mr. Novello also stated that **Defendant had "added [Plaintiff's] IP to their internal checking system that flags and prevents the production of protected designs/content."** (Exhibit M)

51. However, on or about March 31, 2019, after Mr. Novello had assured Plaintiff that Defendant's "internal checking system" would prevent Defendant's continued infringement

8

of the Marks, Defendant printed and shipped a counterfeit shirt containing the "Island Jay" mark. (Exhibit N)

52. On April 17, 2019, Mr. Gonzalez informed Mr. Novello that – despite Mr. Novello's assurances to the contrary – Defendant was still continuing to infringe upon Plaintiff's rights in the Marks by continuing to print knock-off garments containing the Marks. (Exhibit O)

53. Neither Defendant nor Mr. Novello have responded to Mr. Gonzalez's April 17, 2019, email.

54. To date, Defendant continues printing counterfeit garments containing the Marks.

55. In fact, on or about May 8, 2019, Defendant printed and shipped a sweatshirt featuring the "I'm Not Waiting Til 5!" mark. (Exhibit P)

56. On or about May 10, 2019, Defendant printed and shipped a t-shirt featuring the "I'm the Cabana Boy" mark. (Exhibit Q)

## COUNT I

### False Designations of Origin and False Descriptions in Violation of § 43(a) of the Lantham Act, 15 U.S.C. § 1125(a)

57. Plaintiff incorporates by reference Paragraphs 1 through 56.

58. Defendant's conduct constitutes the unauthorized use in commerce of the "Island Jay," "I'm The Cabana Boy," and "If I Can't Wear Flip Flops I Don't Want 2 Go!" marks, and a false designation of origin. Defendant has created a substantial likelihood that the public will be confused, mistaken, or deceived as to the origin, sponsorship, and approval of Defendant's goods and services, and will believe that Defendant's goods and services originate from, or are approved, supported, and endorsed by Plaintiff.

59. Defendant's conduct has created a substantial likelihood that the public will be confused, mistaken, or deceived as to the origin, sponsorship, and approval of Plaintiff's goods, and will believe that Plaintiff's goods originate from, or are approved, supported, and endorsed by Defendant – also known as "reverse confusion" – thereby irreparably depriving Plaintiff of the benefit of its many years of effort to establish the Marks and name in the t-shirt business.

60. Defendant copied the "Island Jay," "I'm The Cabana Boy," and "If I Can't Wear Flip Flops I Don't Want 2 Go!" marks with full knowledge of Plaintiff's prior use of the marks and has acted, and is continuing to act, willfully.

61. Defendant's actions violate § 43(a) of the Lantham Act, 15 U.S.C. § 1125(a).

62. Unless enjoined, Defendant's actions will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law.

## COUNT II

### Federal Trademark Infringement in Violation of § 32 of the Lantham Act, 15 U.S.C. § 1114(1)

63. Plaintiff incorporates by reference Paragraphs 1 through 62.

64. The acts of Defendant constitute use in commerce of reproductions, copies, or colorable imitations of Plaintiff's federally registered marks in connection with the reproduction, distribution, and sale of goods in violation of 15 U.S.C. § 1114(1).

65. Defendant's use of the "Island Jay" mark on or in connection with such goods is likely to cause confusion, to cause mistake, or to deceive.

66. Defendant's use of the "Island Jay" mark on or in connection with such goods is likely to cause confusion, to cause mistake, or to deceive.

67. Defendant's use of the "If I Can't Wear Flip Flops I Don't Want 2 Go" mark on or in connection with such goods is likely to cause confusion, to cause mistake, or to deceive.

68. Defendant's infringement is willful, with full knowledge, and in conscious disregard of Plaintiff's rights and with intent to trade off of Plaintiff's goodwill in its registered marks.

69. Unless the actions of Defendant described herein are enjoined, Plaintiff will suffer injury and damage.

## COUNT III

**Unfair, Unconscionable, and Deceptive Methods, Acts, and Practices in the Conduct of Trade of Commerce in Violation of MCL § 445.903**

70. Plaintiff incorporates by reference Paragraphs 1 through 69.

71. Defendant's use of the Marks constitutes unfair, unconscionable, and deceptive methods, acts, and practices in trade or commerce in that it causes a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendant's goods.

72. Defendant's use of the Marks constitutes unfair, unconscionable, and deceptive methods, acts, and practices in trade or commerce in that it causes a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Plaintiff's goods and services.

73. Defendant's use of the Marks constitutes unfair, unconscionable, and deceptive methods, acts, and practices in trade or commerce in that it represents that its goods have sponsorship, approval, and characteristics that they do not have and that Defendant has sponsorship, approval, status, affiliation, or a connection that it does not have.

74. Defendant's use of the Marks constitutes unfair, unconscionable, and deceptive methods, acts, and practices in trade or commerce in that it represents that Plaintiff's goods have sponsorship, approval, and characteristics that they do not have and that Plaintiff has sponsorship, approval, status, affiliation, or a connection that it does not have.

75. Defendant's use of the Marks constitutes unfair, unconscionable, and deceptive methods, acts, and practices in trade or commerce in that it represents that Defendant's goods are of a particular standard and quality and that they are of a particular style or model when they are another.

76. Defendant's use of the Marks constitutes unfair, unconscionable, and deceptive methods, acts, and practices in trade or commerce in that it represents that Plaintiff's goods and services are of a particular standard and quality and that they are of a particular style or model when they are another.

77. Defendant knew, or by the exercise of reasonable care should have known, that using the Marks would constitute unfair, unconscionable, and deceptive methods, acts, and practices in trade or commerce.

78. Defendant's unlawful actions have caused, and will continue to cause, irreparable injury to Plaintiff unless enjoined.

## COUNT IV

### Common Law Trademark and Trade Name Infringement

79. Plaintiff incorporates by reference Paragraphs 1 through 78.

80. Defendant's unauthorized use the Marks in interstate commerce and in the State of Michigan in connection with the promotion and offering of Defendant's goods constitutes a

false designation of origin, a false and misleading description of fact, and a false and misleading representation of fact, which constitutes an infringement of Plaintiff's common law trademark and trade name rights in the Marks.

81. The words and/or designs used by Defendant are identical to Plaintiff's and they are likely to cause confusion, deceive, and mislead others. Defendant's use of the Marks is likely to create the false impression of the origin, sponsorship, and approval of Defendant's goods and services by Plaintiff, and the origin, sponsorship, and approval of Plaintiff's goods and services by Defendant.

82. Defendant's actions have caused, and will continue to cause, irreparable harm to Plaintiff unless enjoined.

## COUNT V

### Common Law Unfair Competition and Dilution

83. Plaintiff incorporates by reference Paragraphs 1 through 82.

84. Through their activities in adopting, distributing, and selling goods under trademarks and trade names that are identical to Plaintiff's Marks, Defendant has unlawfully used Plaintiff's Marks, names, and goodwill for its own benefit. These activities constitute common law unfair competition and dilution and have caused damage to Plaintiff.

85. Defendant's activities allow Defendant to use and benefit from the goodwill and reputation earned by Plaintiff to obtain a ready customer acceptance of Defendant's goods and constitute unfair competition, palming off, and misappropriation for which Plaintiff is entitled to recover all remedies provided by common law.

## COUNT VI

### Common Law Unjust Enrichment

86. Plaintiff incorporates by reference Paragraphs 1 through 85.

87. Through Defendant's unlawful infringing use of the Marks, Defendant has unjustly enriched itself, and (upon information and belief) continues so doing, in an amount unknown to Plaintiff.

88. Plaintiff is entitled to just compensation for Defendant's unjust enrichment, which was obtained through Defendant's unlawful and infringing use of the Marks.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment:

1. That Defendant has made false designations of origin and false representations in commerce in violation of 15 U.S.C. § 1125(a);

2. That Defendant's use of the federally registered Marks constitutes willful Federal Trademark Infringement in Violation of § 32 of the Lantham Act, 15 U.S.C. § 1114(1);

3. That Defendant's use of the Marks constitutes unfair, unconscionable, and deceptive methods, acts, and practices in trade or commerce, in violation of MCL § 445.903;

4. That Defendant has infringed Plaintiff's Marks in violation of common law;

5. That Defendant has unfairly competed with Plaintiff, in violation of common law;

6. That Defendant has been unjustly enriched by its actions;

7. Preliminarily and permanently enjoining and restraining Defendant, its agents, officers, employees, attorneys, and all persons in active concert or participation with Defendant from:

a. Using, possessing, receiving, manufacturing, distributing, promoting, displaying, licensing, advertising, offering for sale, selling, transferring, registering, assigning, or otherwise employing or exploiting Plaintiff's Marks or any colorable imitation thereof;

b. Committing any other acts calculated or having the tendency to cause confusion, mistake, or deception between Plaintiff and its goods on the one hand, and Defendant or any other party's goods on the other;

c. Committing any other acts calculated or having the tendency to create the mistaken impression that there is some association, connection, or affiliation with and/or sponsorship or approval of Defendant's goods by Plaintiff, and/or Plaintiff's goods by Defendant;

d. Authorizing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to paragraphs (a) through (c), above;

e. Committing trademark and trade name infringement, unfair, unconscionable, and deceptive methods, acts, and practices, unfairly competing with Plaintiff, and/or committing any other act or making any other statement that infringes Plaintiff's Marks, constitutes unfair, unconscionable, and deceptive methods, acts, and practices, infringes on Plaintiff's federally registered Marks, subjects Plaintiff to unfair competition, or unjustly enriches Defendant at Plaintiff's expense under federal law, common law, or the laws of the State of Michigan.

8. Requiring Defendant to deliver up for destruction all infringing and diluting materials and objects, including labels, signs, prints, packages, wrappers, containers, advertisements, electronic media, and other materials bearing any of the Marks or any colorable imitation, or other counterfeit, copy, infringing, or substantially indistinguishable designation of any of Plaintiff's Marks;

9. Requiring Defendant to publish clarifying statements that Defendant is not associated with Plaintiff;

10. Requiring Defendant to account for and to pay over to Plaintiff all of Defendant's profits and all damages sustained by Plaintiff due to Defendant's misuse of Plaintiff's Marks;

11. Awarding Plaintiff its actual damages and Defendant's profits together with treble damages pursuant to 15 U.S.C. § 1117;

12. Awarding Plaintiff applicable statutory damages for Defendant's violation of MCL § 445.903;

13. Awarding Plaintiff its attorney fees, costs, and expenses pursuant to 15 U.S.C. § 1117;

14. Awarding compensatory damages to Plaintiff;

15. Awarding Plaintiff punitive damages in an amount sufficient to deter and punish Defendant for its willful infringement;

16. In the alternative, at Plaintiff's election at any time before final judgment is entered, awarding Plaintiff its statutory damages, pursuant to 15 U.S.C. § 1117.

17. Awarding Plaintiff interest on its compensatory damages at the highest rate permitted by law;

18. Awarding Plaintiff the costs of suit; and,

19. Awarding Plaintiff any and all such other relief as the Court deems proper and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues triable to a jury.

Respectfully submitted

ANTHONY L. DELUCA, P.L.C.

By: */s/ Anthony L. DeLuca*
    Anthony L. DeLuca (P64874)
    14950 E. Jefferson Ave., Ste 170
    Grosse Pointe Park, MI 48230
    (313) 821-5905, phone
    (313) 821-5906, fax
Dated: May 22, 2019    anthony@aldplc.com