## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**ISLAND JAY, INC, a Florida
corporation,**

       *Plaintiff,*

**v.**

**MYLOCKER.COM, L.L.C., a
Michigan limited liability company,**

      *Defendant*.

**Case No. 2:19-cv-11501-MAG-DRG**

**Hon. Mark A. Goldsmith**

## PLAINTIFF ISLAND JAY, INC.'S
## MOTION FOR ENTRY OF DEFAULT JUDGMENT
## AGAINST DEFENDANT



Plaintiff, Island Jay, Inc. ("Island Jay" or "Plaintiff"), pursuant to Fed. R. Civ. P. 55(b)(2), respectfully moves this Court to enter a default judgment against Defendant MyLocker.com, LLC ("MyLocker" or "Defendant") on Counts I-III of Plaintiff's Complaint.   Plaintiff further moves for: (1) a permanent injunction enjoining the unlawful conduct, (2) an award to Plaintiff of statutory damages for Defendant's counterfeiting, and (3) an award to Plaintiff of its reasonable attorneys' fees and costs.   In support of this motion, Island Jay relies on the statements, arguments, and law contained in the accompanying brief in support of this motion.

Pursuant to Local Rule 7.1, on September 11, 2019, Island Jay's counsel Anthony DeLuca left a voicemail for Defendant's counsel Matt Novello to: (1) indicate that Island Jay would be seeking entry of default and a default judgment, and (2) ascertain whether Defendant would concur in the requested relief. (Dkt. 8-1, DeLuca Decl., ¶ 6.)  Defendant's counsel requested that Defendant call him back to discuss, but given that Mr. Novello had previously stopped responsive communications, indicated that if he did not hear back by 3:30 that day, Plaintiff would assume Defendant did not concur.  Defendant's counsel then sent an e-mail confirming the voicemail.  Defendant's counsel did not respond.



I, Thomas W. Cunningham, certify that this motion and brief in support both comply with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  September 13, 2019

By:  /s/ Thomas W. Cunningham
    Thomas W. Cunningham      (P57899)
    1000 Town Center
    Twenty-Second Floor
    Southfield, Michigan 48075
    Tel:      (248) 358-3400
    Fax:      (248) 358-3351
    E-mail: tcunningham@brookskushman.com

**ANTHONY L. DELUCA, P.L.C.**
Anthony L. DeLuca (P64874)
14950 E. Jefferson Ave., Ste 170
Grosse Pointe Park, MI 48230
(313) 821-5905, phone
(313) 821-5906, fax
anthony@aldplc.com

*Attorneys for Plaintiff*



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**Island Jay, INC, a Florida corporation,**

       *Plaintiff,*

**v.**

**MYLOCKER.COM, L.L.C., a Michigan limited liability company,**

    *Defendant*.

**Case No. 2:19-cv-11501-MAG-DRG**

**Hon. Mark A. Goldsmith**

# BRIEF IN SUPPORT OF
# PLAINTIFF ISLAND JAY, INC.'S
# MOTION FOR ENTRY OF DEFAULT JUDGMENT
# AGAINST DEFENDANT



## CONCISE STATEMENT OF ISSUE PRESENTED

1.     Should this Court enter default judgment against Defendant on Counts I-III alleged in Island Jay's Complaint where Defendant was defaulted on September 11, 2019 in accordance with Fed. R. Civ. P. 55(a) for Defendant's failure to plead or otherwise defend this action?

2.     Should this Court enter a permanent injunction enjoining Defendant from any further infringement and/or counterfeiting of its trademarks?

3.     Should this Court award Island Jay statutory damages for Defendant's counterfeiting?

4.      Should this Court award Island Jay its reasonable attorneys' fees and costs for bringing this action?

Plaintiff Answers ***Yes to all***.



i

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

II.   BACKGROUND FACTS................................................................2

    A.    Island Jay's Trademarks............................................................2

    B.    Defendant's Acts of Trademark Infringement, Unfair
           Competition and False Designation of Origin, and
           Counterfeiting.......................................................................3

    C.    Prior to Bringing Suit, Island Jay Attempted to Resolve this
           Dispute Out of Court, but Defendant Displayed Willful
           Misconduct .........................................................................5

    D.    After Bringing Suit, Island Jay Attempted to Resolve this
           Dispute, but Defendant Again Displayed Willful Misconduct ............7

III.  LEGAL STANDARD FOR DEFAULT JUDGMENT..................................8

IV.   ARGUMENT............................................................................9

    A.    Default Judgment Should Be Entered Against Defendant on
           Counts I, II and III in Island Jay's Complaint.................................9

         1.    Island Jay's Claim for Federal Trademark Infringement
               and Counterfeiting Under 15 U.S.C. § 1114 (Count II)
               Has Been Proven..........................................................9

         2.    Island Jay's Claim for False Designation of Origin Under
               15 U.S.C. § 1125(a) (Count I) Has Been Established .............11

         3.    Island Jay's Claim for Unfair Competition Under MCL
               § 445.903 Has Been Established.........................................13

    B.    Defendant's Infringement Was Willful.........................................13

    C.    Island Jay is Entitled to Statutory Damages...................................15

    D.    Island Jay is also Entitled to its Attorneys' Fees and Costs...............18



E.    Island Jay is Entitled to a Permanent Injunction..................................20

F.    The Court May Resolve this Motion Without a Hearing....................22

V.    CONCLUSION.................................................................................23



# TABLE OF AUTHORITIES

## Cases

*Antoine v. Atlas Turner, Inc.*,
    66 F.3d 105 (6th Cir. 1995) ............................................................. 8

*Atmos Nation, LLC v. Kashat*,
    2014 WL 2711961, at *4 (E.D. Mich. June 16, 2014) ........................... 16, 18

*Carson v. Here's Johnny Portable Toilets, Inc.*,
    698 F.2d 831 (6th Cir. 1983) ........................................................ 13

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) ....................................................... 20

*CFE Racing Prods., Inc. v. BMF Wheels, Inc.*,
    793 F.3d 571 (6th Cir. 2015) ........................................................ 20

*Coach, Inc. v. Cellular Planet*,
    2010 WL 1853424, at *5 (S.D. Ohio May 7, 2010) ................................. 14

*Coach, Inc. v. Chouman's Ass'n, Inc.*,
    2012 WL 6705412 (E.D. Mich. Dec. 24, 2014) ................................. 8, 9, 11

*Coach, Inc. v. Chouman's Ass'n*,
    2012 U.S. Dist. LEXIS 181896 *8-9 (E.D. Mich. Dec. 26, 2012) ............... 18

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388, 391 (2006) ........................................................... 21

*Ford Motor Co. v. Cross*,
    441 F.Supp.2d 837 (E.D. Mich. 2006) ............................. 8, 9, 10, 12, 16, 19

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
    315 F.Supp.2d 511 (S.D.N.Y. 2010) ................................................. 18

*Gucci America, Inc. v. MyReplicaHandbag.com*,
    2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ......................................... 18



iv

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc*.,
    502 F.3d 504, 513 (6th Cir. 2007) ...................................................12

*Lermer Germany GmbH v. Lermer Corp*.,
    94 F.3d 1575 (Fed. Cir. 1996) ......................................................20

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc*.,
    2008 WL 1775512, at *3 (N.D. Ill. Apr. 17, 2008).......................23

*Lucky's Detroit, LLC v. Double L, Inc*.,
    533 Fed. Appx. 553 (6th Cir. 2013) .............................................21

*Luxottica Retail North Am. Inc. v. Cas-Man, Inc*.,
    2011 WL 672063, at *5 (S.D. Ohio Jan. 14, 2011)......................22

*Malibu Media, LLC v. Schelling*,
    31 F.Supp.3d 910 (E.D. Mich. 2014) ..............................................8

*McIntosh v. Check Resolution Service, Inc*.,
    2011 WL 1595150, at *4 (E.D. Mich. Apr. 27, 2011) ..................22

*Metro Publishing, Ltd. v. San Jose Mercury News*,
    987 F.2d 637 (9th Cir. 1993) .......................................................12

*Microsoft Corp. v. Compusource Distrib. Inc*.,
    115 F.Supp.2d 800 (E.D. Mich. 2000) .........................................18

*Microsoft Corp. v. Nop*,
    2008 WL 686584, at *4 (E.D. Cal. Mar. 11, 2008).......................22

*Microsoft v. McGee*,
    490 F.Supp.2d 874 (S.D. Ohio 2007) ...........................................16

*North Atl. Operating Co. v. Babenko*,
    2017 U.S. Dist. LEXIS 70397 at *10 (E.D. Mich., May 9, 2017) ...............13

*Pappan Enters. v. Hardee's Food Sys., Inc*.,
    143 F.3d 800 (3d Cir. 1998) ........................................................21

v



*Thomas v. Miller*,
    489 F.3d 293 (6th Cir. 2007) ........................................................................8

*Warner Bros. Records Inc. v. Hentz*,
    2007 WL 2481289, at *4 (S.D. Ill. Aug. 29, 2007).....................................22

## Statutes

15 U.S.C. § 1114 ....................................................................................... 9, 10, 11
15 U.S.C. § 1116 ............................................................................................ 11, 20
15 U.S.C. § 1117 ............................................................................... 15, 16, 17, 18
15 U.S.C. § 1125 ............................................................................... 11, 12, 13
MCL § 445.903 ................................................................................................13

## Other Authorities

Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th
Cong., 2nd Sess., 130 Cong. Rec. H12083 (Oct. 10, 1984) ....................................18

## Rules

Fed. R. Civ. P. 54 ............................................................................................9
Fed. R. Civ. P. 55 ...................................................................................... i, 1, 22



vi

## I.    INTRODUCTION

Plaintiff Island Jay, Inc. ("Island Jay"), pursuant to Fed. R. Civ. P. 55(b)(2), respectfully moves this Court for the following: (1) entry of default judgment against Defendant MyLocker, LLC ("MyLocker") on Counts I-III of the Complaint, (2) entry of a permanent injunction enjoining Defendant's infringing conduct, (3) an award of statutory damages to Island Jay for Defendant's trademark counterfeiting, and (4) an award to Island Jay of its reasonable attorneys' fees and costs.

Defendant is willfully infringing and counterfeiting Island Jay's trademarks. After Island Jay learned of Defendant's unlawful conduct, it gave Defendant multiple opportunities, over six months to cease and desist—but Defendant persisted, after repeatedly telling Island Jay it would stop—forcing Island Jay to file suit in May 2019.   After suing, Island Jay again attempted to resolve this matter, only to discover Defendant continued to willfully counterfeit its trademarks. Defendant ceased communication with Plaintiff and continues to willfully infringe.

Defendant willingly failed to respond to Island Jay's Complaint and has been in default since July 29, 2019. (Dkt. 4).  On September 11, 2019, the Clerk entered default against Defendant. (Dkt. 9).  Island Jay now respectfully requests entry of default judgment against Defendant, entry of a permanent injunction, an award of statutory damages in the amount of $150,000 and an award of Island Jay's reasonable attorneys' fees and costs in this matter.



1

## II.    BACKGROUND FACTS

### A.    Island Jay's Trademarks

Island Jay designs and markets tropical-themed t-shirts and tank tops all over the world. (Dkt. 1, ¶ 1).  All these t-shirts feature one or more of Island Jay's original trademarks, trade names, and service marks, including: "Island Jay," "If I Can't Wear Flip Flops I Don't Want 2 Go," "Not a Worry in the World," "I'm the Cabana Boy," and "I'm Not Waiting Til 5!" (collectively, the "Island Jay Trademarks"). (*Id.*) Plaintiff has exclusive rights in the Island Jay Trademarks. (*Id.*)

Island Jay has established valuable and enforceable trademark rights in the Island Jay Trademarks through bona fide use of the marks in commerce and related advertising. (*Id.* at ¶¶ 11-20).   In recognition of the goodwill and distinctiveness inherent in Island Jay's family of marks, the U.S. Patent and Trademark Office (USPTO) issued federal trademark registrations on the Principal Register to Plaintiff's "Island Jay" (Reg. No. 4451253) and "Not A Worry In The World" (Reg. No. 4447880) trademarks.  (*Id.* at ¶¶ 12-14).  Island Jay also obtained federal registration on the Supplemental Register for its "If I Can't Wear Flip Flops I Don't Want 2 Go" (Supp. Reg. No. 4906521) mark, and within just weeks of filing suit, received federal registration on the Principal Register for its "I'm the Cabana Boy" (Reg. No. 5818096) and "I'm Not Waiting Til 5!" (Reg. No. 5768481) marks. (Ex. A; Guarino Decl., ¶ 4.)  Island Jay's Marks embody Island Jay's considerable



2

goodwill and are extremely valuable assets. (Dkt. 1; ¶¶ 18-19). The allegations set forth in the Complaint are further supported by the Declaration of Jason Guarino, Island Jay's President. (See generally, Ex. A, Guarino Decl.).

**B.    Defendant's Acts of Trademark Infringement, Unfair Competition and False Designation of Origin, and Counterfeiting**

In late 2018, Island Jay discovered counterfeit t-shirts bearing its "I'm a Cabana Boy" trademark for sale on the internet—directly in competition with Island Jay. (Dkt. 1, ¶ 32.)   Island Jay ordered the counterfeit t-shirts to find out who was responsible for the infringement and discovered that Defendant MyLocker was the party manufacturing the t-shirts bearing the infringing mark and shipping them to customers. (*Id.*)   Pictures of Island Jay's authentic t-shirt (left) and Defendant's counterfeit t-shirt (right) are shown side-by-side below.



(Dkt. 1-10; Ex. J to Complaint).

Island Jay also discovered additional counterfeit products bearing Island Jay's trademarks that were manufactured and sold to customers by Defendant.  As shown



3

below, Defendant's improperly used the "Island Jay" and "If I Can't Wear Flip Flops I Don't Want 2 Go" marks in a counterfeit product (on right below)—shown next to Island Jay's authentic product (on left below):

 

(Dkt. 1-12; Ex. L to Complaint).

Shown below on the left is one of Plaintiff's authentic products bearing its "Island Jay" trademark next to one of Defendant's counterfeit products on the right.



(Dkt. 1-14; Ex. N to Complaint).

4



As an additional example, shown below on the left is one of Plaintiff's authentic products bearing its "I'm Not Waiting Til 5" trademark next to one of Defendant's infringing products bearing the identical mark on the right.



(Dkt. 1-16; Ex. P to Complaint).

## C.   Prior to Bringing Suit, Island Jay Attempted to Resolve this Dispute Out of Court, but Defendant Displayed Willful Misconduct

For over a month after discovering Defendant's counterfeit products in December 2018, Island Jay made at least ten (10) efforts to contact Defendant through direct calls, e-mail, Facebook and LinkedIn, but never received a response. (Dkt. 1 at ¶¶ 33-42).  Finally, on January 25, 2019, Island Jay was contacted by Defendant's counsel, Matt Novello. (*Id.*, ¶¶ 43-44 and Dkt. 1-9).  Mr. Novello claimed that Defendant "took these matters seriously" and promised that Defendant would stop creating counterfeit goods containing Plaintiff's Marks. (*Id.*)



The parties continued to discuss resolution of the matter over the next couple of weeks. (*Id.*, ¶45).  Mr. Novello reinforced that "Defendant would not print any more counterfeit goods containing the Marks." (*Id.*)  Mr. Novello also stated that "Defendant would be discontinuing its relationship with the websites that were offering counterfeit goods containing the Marks." (*Id.*)

However, just a week later, Island Jay discovered that Defendant was continuing to manufacture and ship counterfeit goods bearing Island Jay's trademarks, when Island Jay ordered, and Defendant shipped an infringing "I'm the Cabana Boy" t-shirt.  (*Id.*, ¶ 45, See Dkt. 1-11).  On March 18, 2019, Island Jay's attorney wrote a cease and desist letter again requesting a stop to Defendant's counterfeiting. (Dkt. 1, ¶ 48).  Island Jay then discovered another counterfeit product sold by Defendant that infringed on Plaintiff's rights in both the "If I Can't Wear Flip Flops I Don't Want 2 Go!" and "Island Jay" trademarks. (*Id.*, ¶ 49).

On March 28, 2019, Mr. Novello responded and assured Island Jay that his "clients have disabled all connections to" websites offering counterfeit merchandise and that Defendant "added [Plaintiff's] IP to their internal checking system that flags and prevents the production of protected designs/content." (*Id.*, ¶50).

However, just three (3) days after Mr. Novello's assurances, Island Jay ordered, and Defendant manufactured and shipped another counterfeit shirt bearing the "Island Jay" trademark. (*Id.*, ¶ 51).  After another letter to Mr. Novello in April,



6

indicating that Defendant was continuing to infringe upon Plaintiff's rights in the Marks by selling counterfeit merchandise, Defendant and its counsel stopped responding. (*Id.*, ¶¶ 52-53).  However, Defendant continued to manufacture and sell counterfeit merchandise bearing Island Jay's trademarks.  In early May 2019, Island Jay discovered additional counterfeits sold by Defendant bearing its "I'm Not Waiting Til 5!" and "I'm the Cabana Boy" trademarks. (*Id.*, ¶¶ 52-53).

After exhaustive efforts to get Defendant to stop the infringing conduct without resorting to litigation, Island Jay filed this suit on May 22, 2019. (Dkt. 1).

## D.   After Bringing Suit, Island Jay Attempted to Resolve this Dispute, but Defendant Again Displayed Willful Misconduct

After filing suit, Island Jay's attorney again reached out to Mr. Novello to discuss resolution of the matter. (Dkt. 8-1, DeLuca Decl. I, ¶¶ 3-5.)  The parties agreed Mr. Novello would accept service of the Complaint on behalf of Defendant and execute a waiver of service, providing Defendant with additional time to answer. (*Id.*)  The parties agreed to use this time to discuss a resolution.  Mr. Novello accepted service on behalf of Defendant on May 28, 2019 and executed a waiver of formal service. (*Id.*)   The Waiver of Service was filed on May 30. (Dkt. 4).  As a result, Defendant was required to respond to the Complaint by July 29, 2019.

On May 30, 2019, Island Jay's counsel attempted to schedule a meeting to discuss resolution of the matter. (Ex. B, DeLuca Decl. II, ¶ 4.)  After receiving no



7

response, Island Jay's counsel again reached out on June 19, 2019, asking if Defendant still "wanted to discuss resolving this matter." (*Id.*, ¶ 4.) Island Jay also informed him that Island Jay had discovered that Defendant continued to ship counterfeit products. (*Id.*) Island Jay never received a response from Defendant. (*Id.*) Defendant did not answer or otherwise plead in response to Island Jay's Complaint by July 29, 2019.

On September 11, 2019, more than one month after Defendant's responsive pleading deadline, Island Jay requested the Clerk enter default, which the Clerk did that same day. (Dkt. 9).

### III.    LEGAL STANDARD FOR DEFAULT JUDGMENT

The entry of default "conclusively establishes every factual predicate of a claim for relief." *Malibu Media, LLC v. Schelling*, 31 F.Supp.3d 910 (E.D. Mich. 2014) (quoting *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007)). Indeed, when default is entered, "all Plaintiffs' well-pleaded allegations are deemed admitted by Defendants." *Coach, Inc. v. Chouman's Ass'n, Inc.*, No. 11-cv-15665, 2012 WL 6705412 (E.D. Mich. Dec. 24, 2014) (quoting *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006)).

An "entry of default establishes only Defendants' 'liability and the amount of damages must be proven.'" *Id.* at 2 (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (citation omitted). Moreover, a "default judgment must not



8

differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.

R. Civ. P. 54(c).

## IV.   ARGUMENT

### A.   Default Judgment Should Be Entered Against Defendant on Counts I, II and III in Island Jay's Complaint

On September 11, 2019, this Court's Clerk properly entered default against

Defendant. (Dkt. 9). Once default is entered, all well-pled allegations in Island Jay's

Complaint are deemed admitted, except those relating to damages. *Coach*, 2012 WL

6705412 at *3 (quoting *Ford*, 441 F.Supp.2d 837, 846). Island Jay's Complaint

allegations, now deemed admitted, establish it is entitled to judgment on claims I-III

of its Complaint.[1]

### 1.   Island Jay's Claim for Federal Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114 (Count II) Has Been Proven

The factual allegations of Island Jay's Complaint, which Defendant has

conceded by way of default, establish Defendant's liability for trademark

infringement and counterfeiting of the "Island Jay" trademark under 15 U.S.C.

§ 1114. (Count II).

---

[1] Island Jay agrees to dismiss, without prejudice, Counts IV-VI of the Complaint for common law trademark infringement, common law unfair competition and common law unjust enrichment, respectively, contingent on this Court's grant of a default judgment on Counts I-III.



"'The essence of the wrong of trademark infringement is the passing off of the goods as one of those of another.  Under the statute, liability is imposed upon those who use a mark likely to cause confusion with a registered mark.  The test is whether the infringing mark taken as a whole so far resembles the trademark as to be likely to cause a casual or unwary purchaser to mistake it for the original.'" *Ford*, 441 F.Supp.2d at 850 (citation omitted).

Here, Island Jay's Complaint alleges that: (1) Island Jay owns the federally registered "Island Jay" trademark;  (2) it sells t-shirts and other merchandise bearing these trademarks, (3) the trademark is valuable to Island Jay and enjoys a high degree of recognition and goodwill in the United States and throughout the world, (4) that Defendant has sold t-shirts in competition with Island Jay that bear this identical trademark, without Island Jay's authorization (and, in fact, in the face of Island Jay's explicit objections) and (5) that Defendant's conduct has caused and will continue to cause a likelihood of confusion among relevant purchasers as to whether the infringing goods are authorized or affiliated with Island Jay. (Dkt. 1, ¶¶ 9-12, 17-22, 27, 32, 49-51, 63-66, 68 and 69, Dkt. Nos. 1-12 and 1-14).  As such, default judgment of trademark infringement under § 1114 should be entered against Defendant. See *Ford*, 441 F.Supp.2d at 850-51 (finding Ford's trademark infringement allegations sufficient to warrant default judgment against defendant).



10

Island Jay additionally alleged that Defendant sells "counterfeit" t-shirts which include "copies" (i.e. "exact duplicates") of Island's Jay's federally registered "Island Jay" trademark.  Island Jay's Complaint provided many specific examples of Defendant's counterfeiting of the "Island Jay" trademark, including those documented in Exhibits L and N attached to the Complaint.  (See Dkt. Nos. 1-12 and 1-14).  Thus, Island Jay's allegations that Defendant's infringing goods are exact copies of the federally registered trademarks meet the definition of "counterfeit mark" given in 15 U.S.C. § 1116(d)(1)(B). Accordingly, default judgment of trademark counterfeiting under § 1114 should also be entered against Defendant. See *Coach, Inc. v. Chouman's Ass'n*, 2012 2012 WL 6705412, *2 (entering default judgment of trademark counterfeiting against defendant).

### 2. Island Jay's Claim for False Designation of Origin Under 15 U.S.C. § 1125(a) (Count I) Has Been Established

Island Jay's Complaint sets forth factual allegations, which Defendant has conceded by way of default, sufficient to establish liability for false designation of origin under 15 U.S.C. § 1125(a). (Count I).  As noted by the district court in *Ford*, "[o]ur circuit has applied the same 'likelihood of confusion' test" to claims arising under § 1125(a)(1) as is used in the context of trademark infringement claims brought under 15 U.S.C. § 1114. Therefore, for the same reasons that liability is established for Count II of the Complaint for Plaintiff's federally registered "Island



Jay" trademark, liability is also established for Count I and default judgment should be entered accordingly. (See also, Dkt. 1, ¶¶ 9-12, 17-22, 27, 32, 49-51, 63-66, 68 and 69, Dkt. Nos. 1-12 and 1-14); *Ford*, 441 F.Supp.2d at 852 (entering default judgment as to Ford's claim for relief under 15 U.S.C. § 1125).

With respect to the "I'm the Cabana Boy," "If I Can't Wear Flip Flops I Don't Want 2 Go" and "I'm Not Waiting Til 5!" trademarks, which had not yet been granted federal registration on the Principal Register at the time the Complaint was filed[2], Island Jay's pleadings also establish Defendant's liability under § 1125 for these marks. Island Jay's Complaint alleges that: (1) Island Jay owns the trademarks, (2) it sells t-shirts and other merchandise bearing these marks, (3) these trademarks are valuable to Island Jay and enjoy a high degree of recognition and goodwill in the United States and throughout the world, (4) that Defendant has sold t-shirts in competition with Island Jay that bear these identical trademarks, without Island Jay's authorization, (5) and that Defendant's conduct has caused and will

---

[2] The "I'm the Cabana Boy," and "I'm Not Waiting Til 5!" marks were subsequently granted federal registration on the Principal Register after the filing of the Complaint, on June 30 and June 4, respectively. (Ex. A, Guarino Decl. ¶ 4). Island Jay requests that this Court take judicial notice of these registrations. *Metro Publishing, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640-41 (9th Cir. 1993) (taking judicial notice of trademark registrations). "Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark is valid, [...] and therefore, protectable under federal trademark law." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007).



continue to cause a likelihood of confusion among relevant purchasers as to whether the infringing goods are authorized or affiliated with Island Jay. (Dkt. 1, ¶¶ 9-12, 14-22, 27, 32, 47, 49-51, 55-56, and 58-62; Dkt. Nos. 1-10, 1-12, 1-16 and 1-17).   As such, default judgment of trademark infringement of the Island Jay Trademarks under § 1125(a) should be entered against Defendant.

### 3.   Island Jay's Claim for Unfair Competition Under MCL § 445.903 Has Been Established

"To establish entitlement to a default judgment for its claim … of unfair competition under Mich. Comp. Laws § 445.903 …, [a plaintiff] must make the same showing it needed to make for its federal trademark infringement claims; the same standards govern both the Lanham Act and Michigan state law unfair competition claims." *North Atl. Operating Co. v. Babenko*, Case No. 15-14013, 2017 U.S. Dist. LEXIS 70397 at *10 (E.D. Mich., May 9, 2017) (citing *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983)).   Here, because Island Jay is entitled to a default judgment on its federal trademark claims as discussed above, "it is also entitled to a default judgment on its unfair competition claims arising under Michigan law." *Id.*

### B.   Defendant's Infringement Was Willful

Island Jay's Complaint is replete with allegations demonstrating that Defendant's conduct was not only unauthorized by Island Jay but was intentional.



13

Island Jay informed Defendant of its trademark rights in numerous communications, which started in December 2018.  Indeed, in January 2019, Island Jay engaged in discussions with Plaintiff during which [Defendant's attorney] "Mr. Novello was made aware of the Marks and Plaintiff's ownership and exclusive rights to use the Marks." (Dkt. 1 at ¶ 43).  Defendant never denied the infringement, instead stating it "took these matters seriously" and promised it "would stop creating counterfeit goods containing Plaintiff's Marks."  (*Id.* at ¶ 44).  Defendant did not stop.  Island Jay's Complaint identifies at least five additional instances from February to May 2019 in which Defendant continued to distribute counterfeit goods bearing Island Jay's Marks, despite Island's Jay request that it stop. (*Id.*, ¶¶ 45-47, 49-52 and 55-56).  Indeed, complaints by Island Jay to Defendant in April and May 2019 went unanswered. (*Id.*, ¶¶ 52, 55).  These allegations are deemed admitted by Defendant's default, as is the allegation that "Defendant's infringement is willful, with full knowledge, and in conscious disregard of Plaintiff's rights and with intent to trade off of Plaintiff's goodwill …"  (*Id.*, ¶ 68).

Moreover, because of Defendant's failure to plead, this Court could also infer Defendant's infringement was willful.  *Coach, Inc. v. Cellular Planet*, No. 2:09-cv-00241, 2010 WL 1853424, at *5 (S.D. Ohio May 7, 2010) ("[C]ourt may infer that [] defendant's infringement is willful from the defendant's failure to plead.").



Significantly, Defendant's willful infringement has continued since the lawsuit was filed. (Ex. A, Guarino Decl., ¶ 21.) Island Jay has discovered at least ten (10) further instances of Defendant creating and shipping infringing t-shirts bearing the Island Jay's Trademarks. (*Id.*) A finding of willful infringement is warranted.

## C. Island Jay is Entitled to Statutory Damages

Island Jay respectfully requests this Court award it statutory damages in the reasonable amount of $150,000, pursuant to 15 U.S.C. § 1117(c), for the willful counterfeiting of Island Jay's federally registered "Island Jay" trademark.

The Lanham Act provides that the plaintiff may elect to recover statutory damages instead of actual damages and profits "at any time before final judgment is rendered by the trial court[.]" 15 U.S.C. § 1117(c). Island Jay makes that election here. The statute directs that a plaintiff is entitled to "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just ... ." 17 U.S.C. § 1117(c)(1). Where Defendant's use of the counterfeit mark was willful, as here, Plaintiff may receive "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 17 U.S.C. § 1117(c)(2).

"Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is



not disclosed." *Microsoft v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007).

Moreover, statutory damages are appropriate even where "actual damages are nominal or non-existent." *Ford*, 441 F.Supp.2d at 852.   Deterrence of future violations of the Lanham Act is also a proper objective of statutory damages. *Atmos Nation, LLC v. Kashat*, No. 5:14-cv-11019, 2014 WL 2711961, at *4 (E.D. Mich. June 16, 2014) (citing *Ford*, 441 F.Supp.2d 834, at 852–53) (awarding plaintiff statutory damages of $125,000 per mark plus additional $25,000 to encourage deterrence).

As conceded in Island Jay's Complaint by default, Defendant willfully produced and sold counterfeit goods bearing Island Jay's federally registered "Island Jay" trademark. (Dkt. 1, ¶¶ 9-12, 17-22, 27, 32, 49-51, 63-66, 68 and 69, Dkt. Nos. 1-12 and 1-14). ***Critically, even after this suit was filed, Defendant's counterfeiting of the Island Jay mark continued***. (Ex. A, Guarino Decl., ¶ 21).   Indeed, in July-August 2019, Plaintiff discovered Defendant sold counterfeit goods bearing not only the "Island Jay" trademark, but also Plaintiff's "I'm Not Waiting Til 5!" and "I'm the Cabana Boy" marks, which obtained federal registration on the Principal Register on June 4th and 30th, respectively. (*Id.*)

Based on the foregoing, Island Jay respectfully requests that this Court award statutory damages pursuant to 15 U.S.C. § 1117(c)(2). As Defendant's conduct was willful and indeed criminal, the Court's calculus for damages may range from $1,000



16

to $2,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed. 17 U.S.C. § 1117(c)(2).

There is no doubt that Defendant acted willfully in counterfeiting the Island Jay federally registered trademark and continues to do so. (See Sec. IV(B.) above). Therefore, an award of up to $2,000,000 would be appropriate under the statute. However, Island Jay reasonably requests substantially less that amount, only $150,000.

Island Jay's requested statutory award is reasonable and appropriate under 15 U.S.C. § 1117(c)(2), which authorizes a court to award up to $2,000,000 per mark willfully infringed per type of good and is modest in comparison with the statutory maximum award. Moreover, Defendant has also willfully counterfeited two additional marks, "I'm the Cabana Boy," and "I'm Not Waiting Til 5!", which did not achieve federal registration until a few weeks after the Complaint was filed. (Ex. A, Guarino Decl., ¶¶ 4, 21). Thus, Island Jay could amend and seek statutory damages for Defendant's willful counterfeiting of these marks.

An award of $150,000 against Defendant is also necessary to send a strong message of deterrence to other parties who might consider trafficking in counterfeits, and would partially compensate Island Jay for its damages, which are the primary remedial goals of the Lanham Act. Joint Statement of Trademark Counterfeiting



17

Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong. Rec. H12083 (Oct. 10, 1984).

Island Jay's request for statutory damages is also in line with statutory damage awards in similar cases. See *e.g.*, *Coach, Inc. v. Chouman's Ass'n*, No. 11-cv-15665, 2012 U.S. Dist. LEXIS 181896 *8-9 (E.D. Mich. Dec. 26, 2012) (awarding $1,500,000 for use of three counterfeit marks); *Atmos Nation,* 2014 WL 2711961, at *4 (awarding plaintiff statutory damages of $125,000 per mark plus additional $25,000 to encourage deterrence); *Gucci America, Inc. v. Duty Free Apparel, Ltd*., 315 F.Supp.2d 511, 521-22 (S.D.N.Y. 2010) (awarding $2,000,000 for the use of two counterfeit marks); *Gucci America, Inc. v. MyReplicaHandbag.com*, No. 07-cv-2438, 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) (awarding $100,000 per infringing mark *per type of good* for a total award of $3,600,000).

## D.    Island Jay is also Entitled to its Attorneys' Fees and Costs

Island Jay also respectfully requests that the Court award reasonable attorney's fees and costs incurred as a result of this action pursuant to 15 U.S.C. § 1117 (Prevailing party in Lanham Act case "shall be entitled . . . the costs of the action" and "[t]he court in exceptional cases may award reasonable attorney fees …". Indeed, the Court may award attorney's fees in addition to statutory damages where the infringement was willful. *Microsoft Corp. v. Compusource Distrib. Inc.*, 115 F.Supp.2d 800, 812 (E.D. Mich. 2000).



As discussed above, all well pleaded facts are taken as true, thus, Defendant's acts of counterfeiting are deemed willful.  Defendant's post-Complaint conduct further confirms this is an exceptional case warranting attorney's fees.  Indeed, long after Defendant's promise to stop selling counterfeit goods, it continues to infringe. (Ex. A, Guarino Decl., ¶ 21).  Thus, Defendant's willfulness supports an award to Island Jay of its attorneys' fees and costs incurred in this matter.

Island Jay's counsel spent approximately $15,000 on attorneys for this matter through the filing of this motion and $400 in costs. (*Id.*, Guarino Decl., ¶ 24).  These fees and costs continue to be accrued and will continue to accrue until default judgment is entered.  If the Court deems it necessary, upon entry of default judgment, Island Jay's counsel will submit a declaration substantiating the total number of hours spent on this case, including for drafting, filing and arguing (if necessary) the present motion.  Island Jay respectfully requests the Court to enter default judgment for all reasonable attorneys' fees and costs incurred by Island Jay, in an amount to be determined at the conclusion of the case. *Ford*, 441 F.Supp.2d at 854 (granting that the Court enter default judgment for all reasonable legal fees and costs incurred by default judgment against Defendant and awarding Ford its costs as the prevailing party and its attorney's fees in an amount over $28,000).



**E.     Island Jay is Entitled to a Permanent Injunction**

Island Jay also respectfully requests that this Court enter an injunction enjoining Defendant from infringing any of Island Jay's trademark rights.

The Lanham Act authorizes district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation of subsection (a), (c), or (d) of Section 43" of the Lanham Act.  15 U.S.C. § 1116(a); *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 595 (6th Cir. 2015).  Indeed, injunctive relief is "the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).  A permanent injunction is "ordinarily granted upon a finding of trademark infringement." *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996).

The following, traditional four-factor test for entering a permanent injunction is typically met where liability has been established in a trademark infringement or counterfeiting case: (1) irreparable injury in the absence of an injunction, (2) inadequacy of legal remedies, (3) balance of hardships favor plaintiff trademark owner over infringing defendant, and (4) public interest would not be disserved by a permanent injunction (indeed, public interest is served by both trademark rights being respected and enforced, as well as the removal of counterfeit goods from the



20

marketplace. See *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Lucky's Detroit, LLC v. Double L, Inc*., 533 Fed. Appx. 553, 555 (6th Cir. 2013) (applying eBay factors to Lanham Act case).

Here, liability for willful trademark infringement, unfair competition and false designation of origin, and trademark counterfeiting has been established by Defendant's default. Thus, a permanent injunction should therefore be entered. Notwithstanding, the *eBay* factors all support entry of an injunction. First, Defendant's actions have caused irreparable harm to Plaintiff's goodwill and reputation through its sale of substandard, counterfeit goods which the public attributes to Island's Jay's brands. (Dkt. 1, ¶¶73-78). Given such injury to Island Jay's goodwill and reputation, monetary damages alone are inadequate to compensate it for the damage it has incurred and may continue to incur if an injunction is not entered. Further, the balance of hardships unquestionably and overwhelmingly favors Island Jay in this case, as Defendant's own willful actions brought it here and have resulted in irreparable harm to Island's Jay's business, goodwill and reputation. Lastly, the public interest will be served by a permanent injunction, as it would prevent consumer confusion. *Pappan Enters. v. Hardee's Food Sys., Inc*., 143 F.3d 800, 807 (3d Cir. 1998) ("[p]ublic interest … in a trademark case … is most often a synonym for the right of the public not to be deceived or confused.") A permanent injunction is both necessary and warranted in



21

this case. Island Jay respectfully requests that this Court enter the [Proposed] Permanent Injunction attached as Ex. C.

## F.     The Court May Resolve this Motion Without a Hearing

Fed. R. Civ. P. 55(b)(2) authorizes a Court to conduct a hearing when it needs to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Here, because this is a motion seeking default judgment, all allegations in the Complaint are deemed admitted, and since Island Jay is seeking statutory damages, there is no need for an accounting or determination of the amount of damages. Island Jay respectfully submits that this Court could resolve this motion without a hearing if it is so inclined.

Indeed, this Court may award statutory damages without a hearing—and Courts in this district and in other districts routinely do so. See, *e.g.*, *McIntosh v. Check Resolution Service, Inc.*, No. 10-14895, 2011 WL 1595150, at *4 (E.D. Mich. Apr. 27, 2011); see also *Luxottica Retail North Am. Inc. v. Cas-Man, Inc.*, No. 1:10-cv-374, 2011 WL 672063, at *5 (S.D. Ohio Jan. 14, 2011); *Microsoft Corp. v. Nop*, No. CIV-S-07-1276, 2008 WL 686584, at *4 (E.D. Cal. Mar. 11, 2008); *Warner Bros. Records Inc. v. Hentz*, No. 06-cv-685-JPG, 2007 WL 2481289, at *4 (S.D. Ill. Aug. 29, 2007). Indeed, because statutory damages do not require proof of actual damages or lost profits, no factfinding is required by the Court. *Lorillard Tobacco*



22

*Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03 C 5311, 03 C 4844, 2008 WL 1775512, at *3 (N.D. Ill. Apr. 17, 2008).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff Island Jay respectfully requests that the Court enter default judgment against Defendant MyLocker, enter a permanent injunction against Defendant in the form attached as Ex. C, award statutory damages in the amount of $150,000 for trademark counterfeiting, and award Island Jay's reasonable attorneys' fees and costs.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  September 13, 2019

By:   /s/ Thomas W. Cunningham
    Thomas W. Cunningham      (P57899)
    1000 Town Center
    Twenty-Second Floor
    Southfield, Michigan 48075
    Tel:       (248) 358-3400
    Fax:       (248) 358-3351
    E-mail: tcunningham@brookskushman.com



23

**ANTHONY L. DELUCA, P.L.C.**
Anthony L. DeLuca (P64874)
14950 E. Jefferson Ave., Ste 170
Grosse Pointe Park, MI 48230
(313) 821-5905, phone
(313) 821-5906, fax
anthony@aldplc.com

*Attorneys for Plaintiff*



24

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on <u>September 13, 2019,</u> I electronically filed the foregoing **PLAINTIFF ISLAND JAY, INC.'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT** with the Clerk of the Court for the Eastern District of Michigan using the ECF System which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System: None.

**BROOKS KUSHMAN P.C.**

By: <u>  /s/  Thomas W. Cunningham  </u>
    Thomas W. Cunningham     (P57899)
    1000 Town Center
    Twenty-Second Floor
    Southfield, Michigan 48075
    Tel:      (248) 358-3400
    Fax:      (248) 358-3351
    E-mail: tcunningham@brookskushman.com

    *Attorneys for Plaintiff*

