## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ISLAND JAY, INC,                          |
                                          |
     Plaintiff,           |
                                          |    CASE NO. 19-11501
    v.                            |
                                          |    HON. MARK A. GOLDSMITH
MYLOCKER.COM, LLC,                        |
                                          |
     Defendant.          |

## PLAINTIFF'S MOTION FOR ORDER HOLDING DEFENDANT IN CONTEMPT FOR FAILURE TO COMPLY WITH DEFAULT JUDGMENT ORDER

COMES NOW, Plaintiff Island Jay, Inc. ("Island Jay"), moves for the Court to order holding Defendant MyLocker.com, LLC ("MyLocker"), in contempt pursuant to Fed.R.Civ.P. 70(e) for failure to comply with this Court's Order Granting Plaintiff's Motion for Default Judgment ("Order").

This Court granted Plaintiff's Motion for Default Judgment ("Motion") (ECF No. 10) and issued the Order (ECF No. 20) on June 17, 2020. Thereunder, MyLocker was:

1. required to pay $150,000.00 in statutory damages,

2. required to pay $11,146.32 for attorney fees and $400.00 in costs,

3. permanently enjoined from specific actions that are in violation of Island Jay's trademark rights, and

4. required to surrender all materials in violation of Island Jay's trademark rights and the contact information regarding the source of the product orders violating Island Jay's trademark rights.

MyLocker was further ordered to file a report explaining what they had done to comply with the above requirements within thirty days of being served with the Order. Defendant was served a copy of the Default Judgment Order but has failed to comply in any way and in fact has continued to infringe on Island Jay's trademarks. Defendant's refusal to comply with the Order demonstrates that Island Jay will not be compensated and will continue to be harmed by Defendant if this Court does not hold Defendant in contempt.

## <u>CERTIFICATE UNDER E.D. MICH LR 7.1(a)</u>

Concurrence pursuant to E.D. MICH LR 7.1(a) is not required, because Defendant has not appeared before this Court, by counsel or otherwise.

Respectfully submitted this 27th day of July 2021.

<u>/s/ John Shoreman</u>
John Shoreman
McFadden & Shoreman
1050 Connecticut Avenue NW
Suite 500
Washington, DC 20036
(202) 772-3188
jms@mcfaddenshoreman.com

## <u>BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER HOLDING DEFENDANT IN CONTEMPT FOR FAILURE TO COMPLY WITH DEFAULT JUDGMENT ORDER</u>

# Table of Contents

STATEMENT OF ISSUE PRESENTED .................................................................................. 4

TABLE OF AUTHORITIES & CONTROLLING AUTHORITIES ............................................... 4

INTRODUCTION ............................................................................................................... 5

STATEMENT OF FACTS ..................................................................................................... 6

LEGAL ARGUMENT ........................................................................................................ 12

   I.   Defendant should be held in contempt for knowingly violating this Court's Default Judgment Order. ........................................................................................................................ 12

      A.   This Court's Default Judgment Order is definite and specific. ..................................... 13

      B.   There Is Clear and Convincing Evidence That Defendant Knowingly Violated This Court's Default Judgment Order. ........................................................................................... 15

      C.   Defendant has not met its burden of demonstrating it is unable to comply with this Court's Default Judgment. ......................................................................................................... 16

   II.   This Court has authority to hold MyLocker's CEO, Robert Hake, in contempt on behalf of MyLocker. ........................................................................................................................ 18

   III.   Plaintiff is entitled to the relief already ordered and should receive the further relief requested here for Defendant's continued violations. ........................................................... 20

CONCLUSION AND PRAYER FOR RELIEF ......................................................................... 21

LOCAL RULE CERTIFCATION .......................................................................................... 24

CERTIFICATE OF SERVICE ............................................................................................... 25

## **STATEMENT OF ISSUE PRESENTED**

Whether the Court should find Defendant MyLocker in contempt of this Court's Order Granting Plaintiff's Motion for Default Judgment, Order Granting Pl.'s Mot for Default J. PageID.175-77 (ECF 20), and order the relief requested by Plaintiff when Defendant knowingly violated the definite and specific terms of the Judgment/Order.

## **TABLE OF AUTHORITIES & CONTROLLING AUTHORITIES**

### CASES

Adcor Indus., Inc. v. Bevcorp, LLC, 411 F. Supp. 2d 778
(N.D. Ohio 2005), aff'd, 252 F. App'x 55 (6th Cir. 2007) ...............................14, 17

Cernelle v. Graminex, L.L.C.,
437 F. Supp. 3d 574 (E.D. Mich. 2020)....................................................................19

Downey v. Clauder, 30 F.3d 681 (6th Cir. 1994) ....................................................15

Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v.
Gary's Elec. Serv. Co., 340 F.3d 373 (6th Cir. 2003) ......... 14, 17, 19,20, 21, 22, 23

Gascho v. Glob. Fitness Holdings, LLC, 875 F.3d 795 (6th Cir. 2017).....14, 15, 19, 20, 22

N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585 (6th Cir. 1987) .................14, 17

N.L.R.B. v. Deena Artware, Inc, 261 F.2d 503 (6th Cir. 1958),
rev'd on other grounds, 361 U.S. 398 (1960)...........................................................15

Polo Fashions, Inc. v. Stock Buyers Int'l, Inc., 760 F.2d 698 (6th Cir.1985)..........17

Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716 (6th Cir. 1996) .................17, 19

United States v. Hochschild, 977 F.2d 208 (6th Cir. 1992), cert. denied, 506 U.S. 1067 (1993) ........................................................................................................20

United States v. United Mine Workers of Am., 330 U.S. 258 (1947)....................22

Wilson v. United States, 221 U.S. 361 (1911).........................................................20

**RULES**
E.D. MICH LR 7.1(a) ...............................................................................................2

Fed.R.Civ.P. 70(e)...............................................................................................1, 24

## INTRODUCTION

Plaintiff Island Jay is the registered owner of the following trademarks: "Island Jay" (U.S. Reg. No. 4451253); "Not A Worry In The World" (U.S. Reg. No. 4447880); "If I Can't Wear Flip Flops I Don't Want 2 Go" (U.S. Supp. Reg. No. 4906521); "I'm the Cabana Boy" (U.S. Reg. No. 5818096), "I'm Not Waiting Til 5!" (U.S. Reg. No. 5768481) (collectively, the "Marks"). Compl. ¶¶ 12-16 (ECF l); Jason Guarino Decl. ¶ 4, Exhibit A to Pl. Mot. (ECF 10-2).  This Court granted Plaintiff's Motion for Default Judgment against Defendant and ordered Defendant to: (1) pay $150,000.00 in statutory damages, (2) pay $11,146.32 for attorney fees and $400.00 for costs, (3) be permanently enjoined from infringing on Island Jay's rights to the Marks, and (4) surrender all materials and contact information regarding the source of the product orders which violated Island Jay's trademark rights. MyLocker was further ordered to file a report explaining what it had done to comply with the above requirements within thirty (30) days of being served with the Order.

To date, Defendant has failed to meet any of its obligations listed in the Order and has not responded to the Court since the filing of the Complaint. Defendant continues to infringe on Plaintiff's rights by using Plaintiff's Marks on counterfeit goods that Defendant creates and distributes. Plaintiff seeks enforcement of the Order, sanctions against Defendant for contempt, and attorney fees incurred in bringing this Motion.

## STATEMENT OF FACTS

Plaintiff is a corporation based in Florida and the successor of Jason Guarino and Alistair Mitchell, who are the principals of Island Jay, Inc., and Mango Gear, Inc. (a former Florida corporation), all of whom assigned or granted Plaintiff an exclusive license to utilize the Marks. Compl. ¶ 3, PageID.2 (ECF 1). For the purposes of this Motion, the terms "Plaintiff" and "Island Jay" refer to the present Plaintiff, as well as its predecessors, if applicable. Compl. ¶ 3, PageID.2 (ECF 1).

Island Jay is a corporation that produces goods such as t-shirts and other apparel. Compl. ¶ 9-10, PageID.1 (ECF 3). Plaintiff is the registered owner of the following marks: trademarks: "Island Jay" (U.S. Reg. No. 4451253); "Not A Worry In The World" (U.S. Reg. No. 4447880); "If I Can't Wear Flip Flops I Don't Want 2 Go" (U.S. Supp. Reg. No. 4906521); "I'm the Cabana Boy" (U.S. Reg. No. 5818096), "I'm Not Waiting Til 5!" (U.S. Reg. No. 5768481) (collectively, the "Marks"). Compl. ¶¶ 12-16, PageID.3-4 (ECF 1). Plaintiff has made significant

investments of both time and money in the Marks. Compl. ¶ 17-22, PageID. 4-5 (ECF 1).

For years, Plaintiff has had to repeatedly take actions to stop counterfeit goods bearing the Marks from being sold online. Compl. ¶ 28, PageID.6 (ECF 1). Plaintiff has sent cease and desist letters notifying owners of the websites and hosting companies of the infringement. Generally, these actions are successful, and the counterfeit products are removed from infringing websites. Compl. ¶ 29, PageID.6 (ECF 1). When those actions do not stop a website from infringing on the Marks, Plaintiff finds out who prints the product by ordering one of the counterfeit items. Compl. ¶¶ 30, PageID.6 (ECF 1). This is exactly how Plaintiff confirmed that Defendant was primarily responsible for printing and shipping the counterfeit goods containing the Marks in this case. Compl. ¶¶ 31-32, PageID.6 (ECF 1).

Defendant is a limited liability company based in Michigan that prints apparel such as t-shirts through online services. Compl. ¶¶ 23-24, PageID.5 (ECF 1). To provide these printing services, Defendant has a website (https://mylocker.net) used to sell customers "t-Shirts, sweatshirts, and thousands of other products [that] can be personalized with your logo". Compl. ¶¶ 23-24, PageID.5 (ECF 1). In practice, customers order counterfeit products displaying the Marks from unauthorized third-party websites which are connected to Defendant's website. Compl. ¶¶ 25-27, 32 PageID.5-6 (ECF 1). An automated process orders the goods from Defendant's

website, which Defendant then receives, prints, and ships to the customer. Compl. ¶¶ 25-27, 32 PageID.5-6 (ECF 1). Robert Hake is the CEO and sole owner of MyLocker. Compl. ¶ 41, PageID.7 (ECF 1).

Plaintiff attempted to notify Defendant that it was infringing on Plaintiff's Marks. Compl. ¶ 33, PageID.6 (ECF 1). In December of 2018, Plaintiff called the phone number and emailed the email address on Defendant's website. Compl. ¶¶ 34-38, PageID.6-7 (ECF 1) (Compl. Ex. A., B.). When Plaintiff called the phone number from Defendant's website, Plaintiff left a voice message or was unable to speak to anyone after being put on hold. Compl. ¶ 34, 38, PageID.6,7 (ECF 1) (Compl. Ex. A., E.). In response to Plaintiff's email, Plaintiff only received an automatic response which confirmed that Plaintiff's email was received. Compl. ¶ 36, PageID.7 (ECF 1) (Compl. Ex. C.). Plaintiff also tried to reach out to Defendant through Defendant's Facebook account but received no response. Compl. ¶ 37, PageID.7 (ECF 1) (Compl. Ex. D.)

Throughout January of 2019, Plaintiff sent another message to Defendant's Facebook page, called Defendant again, and sent a message to MyLocker's CEO, Robert Hake, through Mr. Hake's LinkedIn account, each time explaining the infringements. Compl. ¶¶ 39-41, PageID.7 (ECF 1) (Compl. Ex. F., G., H.).

Plaintiff received an email response from Defendant's attorney, Matt Novello, on January 25, 2019 – almost two weeks after Plaintiff's attorney sent MyLocker

CEO, Mr. Hake, an email in early January. Compl. ¶¶ 42-43, PageID.7 (ECF 1) (Compl. Ex. I.). During the email exchange, Plaintiff made Mr. Novello aware that Plaintiff owned and had exclusive rights to the Marks. Compl. ¶ 43, PageID.7 (ECF 1). Mr. Novello assured Plaintiff that Defendant would no longer make counterfeit goods that bore the Marks and Defendant "took these matters seriously". Compl. ¶ 44, PageID.7 (ECF 1) (Compl. Ex. I.).

Mr. Novello called Plaintiff on February 6, 2019, where Mr. Novello told Plaintiff that MyLocker would end its relationship with the unauthorized websites that offered products infringing on Plaintiff's Marks and again, that Defendant would stop creating counterfeit goods containing the Marks. Compl. ¶ 45, PageID.8 (ECF 1).  Despite their promise, Defendant kept creating counterfeit goods with Plaintiff's Marks ordered on unauthorized, third-party websites. Compl. ¶¶ 46-47, PageID.8 (ECF 1) (Compl. Ex. J.).

After discovering the continued infringements, Plaintiff's attorney sent a certified cease and desist letter in March of 2019 which again notified Defendant that Defendant was infringing on Plaintiff's Marks. Compl. ¶ 48, PageID.8 (ECF 1) (Compl. Ex. K.). Defendant continued to print and ship goods bearing Plaintiff's Marks before Defendant's attorney, Mr. Novello, responded to Plaintiff's cease and desist letter. Compl. ¶¶ 49-50, PageID.8 (ECF 1) (Compl. Ex. L.). In Mr. Novello's email response, he said Defendant had "disabled all connections to" one of the third-

party websites use to order products infringing on Plaintiff's Marks and that
Defendant had already "added [Island Jay's] IP to their internal checking system that
flags and prevents the production of protected designs/content."   Compl. ¶ 50,
PageID.8 (ECF 1) (Compl. Ex. M.).

About three days later, Defendant printed and shipped yet another counterfeit
product that used one of Plaintiff's Marks. Compl. ¶ 51, PageID.8-9 (ECF 1)
(Compl. Ex. N.). Like it had previously, Plaintiff notified Mr. Novello on April 17,
2019, that Defendant had not stopped creating counterfeit goods that infringed on
Plaintiff's Marks contrary to what Mr. Novello had repeatedly told Plaintiff. Compl.
¶ 52, PageID.9 (ECF 1) (Compl. Ex. O.).  Throughout May of 2019, Defendant
MyLocker continued to create counterfeit products that contained Plaintiff's Marks.
Compl. ¶¶ 55-56, PageID.9 (ECF 1) (Compl. Ex. P., Q.). As of this filing, no party
associated with Defendant, including Mr. Novello, has responded to Plaintiff's April
17, 2019 communication. Compl. ¶ 53, PageID.9 (ECF 1).

Consequently, Plaintiff filed the Complaint on May 22, 2019. Compl. (ECF
1). Plaintiff brought claims for (1) false designation of origin and false descriptions
in violation of § 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C.
§ 1125(a); (2) federal trademark infringement under § 32 of the Lanham Act, 15
U.S.C. § 1114(1); (3) violation of § 3(1) of the Michigan Consumer Protection Act,
MCL § 445.903(1); (4) common law trademark and trade name infringement; for

common law unfair competition and dilution; and for common law unjust enrichment. Compl. ¶ 5, PageID.2 (ECF 1). Defendant did not respond to the complaint. Default J. Order PageID.176 (ECF 20).

After Defendant failed to respond to any of this Court's proceedings, Plaintiff requested a Clerk's entry of default on September 11, 2019 which the Court entered that same day. Pl. Req. Clerk's Entry Default (ECF 9). Plaintiff then filed the Motion for Default Judgment two days later on September 13, 2019 in which they agreed to dismiss Counts IV through VI of the Complaint without prejudice. Pl. Mot. Default J. at 9 n.1. (ECF 10). A Certificate of Service for service of the Motion on MyLocker was entered by the Court on October 1, 2019. (ECF 11). The motion was granted by the Court on June 17, 2020. Default J. Order (ECF 20). The Court's Order stated that Defendant was:

1. required to pay $150,000.00 in statutory damages,

2. required to pay $11,146.32 for attorney fees and $400.00 for costs,

3. permanently enjoined from specific actions that are in violation of Island Jay's trademark rights, and

4. required to surrender all materials in violation of Island Jay's trademark rights and the contact information regarding the source of the product orders violating Island Jay's trademark rights.

MyLocker was further ordered to file a report explaining what they had done to comply with the above requirements within thirty days of being served with the Judgment. Default J. PageID. 3 (ECF 21).

However, MyLocker has produced and sold counterfeit products with Island Jay's trademarks since that time, at least as recently as November 24, 2020. *See* Jason Guarino Decl. ¶ 9, Ex. A.

## **LEGAL ARGUMENT**

## I.     **Defendant should be held in contempt for knowingly violating this Court's Default Judgment Order.**

Judgments and orders of this Court are not advisory but binding, and the contempt power gives a court a tool to enforce compliance. See Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 378–79 (6th Cir. 2003).

When a moving party demonstrates that an opposing party has knowingly violated a definite and specific judgment of the court by clear and convincing evidence, a court may order that the opposing party be held in contempt. e.g., Gascho v. Glob. Fitness Holdings, LLC, 875 F.3d 795, 800 (6th Cir. 2017); N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 591 (6th Cir. 1987). If contempt is shown, the burden shifts and the non-moving party must then show cause why it was not able to comply with the Order's requirements. Gascho v. Glob. Fitness Holdings, LLC, 875 F.3d 795, 800 (6th Cir. 2017) (citation omitted). It need not be shown that

a defendant has actual knowledge of the judgment or order since, often, the only evidence available is the word of the party out of compliance with the order. <u>See</u> <u>Adcor Indus., Inc. v. Bevcorp, LLC</u>, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005), <u>aff'd</u>, 252 F. App'x 55 (6th Cir. 2007).

## A. <u>This Court's Default Judgment Order is definite and specific.</u>

An order is considered specific when it clearly explains the responsibilities of the party that must comply sufficient so that the party is on notice of what is expected and definite when the requirements of the order become effective. <u>See</u> <u>Gascho v.</u> <u>Glob. Fitness Holdings, LLC</u>, 875 F.3d 795, 800-01 (6th Cir. 2017). Often, an order is straightforward in specifying the date the order takes effect. <u>See</u> <u>Gascho v. Glob.</u> <u>Fitness Holdings, LLC, 875 F.3d 795, 800 (6th Cir. 2017)</u> ("Normally, the date on which a court's command becomes definite and specific is not difficult to determine."). The Sixth Circuit has found orders not specifying date or immediacy may not be considered definite and specific for purposes of finding contempt. <u>See</u> <u>Downey v. Clauder</u>, 30 F.3d 681, 686 (6th Cir. 1994). If the order is conditioned on an event or later date, the order does not become definite and specific until that time. <u>See, e.g.</u>, <u>Gascho v. Glob. Fitness Holdings, LLC</u>, 875 F.3d 795, 801 (6th Cir. 2017); <u>N L R B v. Deena Artware, Inc</u>, 261 F.2d 503, 510 (6th Cir. 1958), <u>rev'd on other</u> <u>grounds</u>, 361 U.S. 398 (1960).

Here, the Court's Order Granting Plaintiff's Motion for Default Judgment listed all of Defendant's obligations and is both definite and specific. Default J. Order PageID.177 (ECF 20). This Court gave definite dates that do not leave room for confusion. Id. (Stating, "the Order gives Defendant five (5) days to comply with the affirmative requirements after they have been served with the judgment.") MyLocker was further ordered to file a report explaining what they had done to comply with the above requirements within thirty (30) days of being served with the Order. Default J. Order PageID.177 (ECF 20).

The Order lists the specific dollar amounts MyLocker needed to pay and even separated the amounts for damages, attorney fees, and costs. Default J. Order PageID.176 (ECF 20). The Order goes on to list who ("including but not limited to, agents, distributors, retailers, servants, attorneys, and those in active concert or participation with them") and what Defendant is enjoined from doing ("manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, shipping, selling or offering to sell counterfeit and infringing goods using the Island Jay Trademarks, logos or designs…"). Default J. Order PageID.176-177 (ECF 20). The Order also explains what actions Defendant must take in the same level of detail as the requirements listed above. Default J. Order PageID.177 (ECF 20). The detailed dates and instructions make Defendant's obligations definite and specific, so violations of the Order should be enforced.

**B. <u>There Is Clear and Convincing Evidence That Defendant Knowingly Violated This Court's Default Judgment Order.</u>**

Evidence of a violation by a party subject to a court's order can consist of affirmative conduct or failing to take actions required by the order. <u>See Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co.</u>, 340 F.3d 373, 379 (6th Cir. 2003) (quotation omitted). Noncompliance can be failing to pay damages and fees, failing to take required actions, or continuing to take actions that have been enjoined. <u>See Rolex Watch U.S.A., Inc. v. Crowley</u>, 74 F.3d 716, 719 (6th Cir. 1996). The moving party must show evidence that the contemnor had knowledge of the order. <u>Rolex Watch U.S.A., Inc. v. Crowley</u>, 74 F.3d 716, 720 (6th Cir. 1996) (citing <u>N.L.R.B. v. Cincinnati Bronze, Inc.</u>, 829 F.2d 585, 591 (6th Cir.1987)).

While the party subject to the judgment needs to be placed on notice, the moving party does not have to establish that those parties have *actual* knowledge. <u>Adcor Indus., Inc. v. Bevcorp, LLC</u>, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005), <u>aff'd</u>, 252 F. App'x 55 (6th Cir. 2007) (citing <u>Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.</u>, 760 F.2d 698, 700 (6th Cir.1985)). Direct and circumstantial evidence can be used by the movant to meet this burden. <u>See Adcor Indus., Inc. v. Bevcorp</u>, LLC, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005), <u>aff'd</u>, 252 F. App'x 55 (6th Cir. 2007).

Here, Defendant was aware of their violations and the Judgment. The Judgment was served on Defendant through its CEO, Robert Hake, who is a registered agent

of MyLocker. Additionally, even before service, this Judgment should not have been a surprise to Defendant, because Plaintiff has been notifying Defendant of the continuous infringements since before the Complaint was even filed. Compl. ¶¶ 33-56, PageID.6-9 (ECF 1) (Compl. Ex. A.-Q.). Other documents arising from this case, such as the Motion for Default Judgment, have been served on Defendant as well. A Certificate of Service for service of the Motion on MyLocker was entered by the Court on October 1, 2019. (ECF 11).

MyLocker has not paid any money to Plaintiff, and Defendant has not delivered any of the items or information listed in the Order. Jason Guarino Decl. ¶ 8 Ex. A. Critically, Defendant has not refrained from the actions that were permanently enjoined. Despite being served the Order and notified repeatedly by Plaintiff of the infringements committed, Defendant has continued to infringe by using Island Jay's Marks. Jason Guarino Decl. ¶ 9 Ex. A. While evidence of even one of these actions or inactions should be considered a violation of the Order, the complete disregard of this Court's decision after repetitive communications is a compelling reason to find the MyLocker in contempt.

### C. **Defendant has not met its burden of demonstrating it is unable to comply with this Court's Default Judgment.**

Once the movant has made a prima facie case for contempt, the burden shifts to the party subject to the order at issue. <u>Cernelle v. Graminex, L.L.C.</u>, 437 F. Supp. 3d 574, 600 (E.D. Mich. 2020) (citation omitted). The contemnor must put forth

evidence that shows "categorically and in detail" that they are unable to comply with the Court's order. <u>Rolex Watch U.S.A., Inc. v. Crowley</u>, 74 F.3d 716, 720 (6th Cir. 1996) (citation omitted). The inability to comply with the order cannot be caused by the contemnor. <u>Gascho v. Glob. Fitness Holdings, LLC</u>, 875 F.3d 795, 802 (6th Cir. 2017) (citing <u>Gary's Elec.</u>, 340 F.3d at 381–83)). When analyzing the failure of the contemnor to comply with the order, courts also look to whether they "took all reasonable steps within [their] power to comply…" <u>Id</u>.

In this case, MyLocker has not responded to the service of the Order. Jason Guarino Decl. ¶ 7-10, Ex. A. Defendant's repeated assurances that it would take steps to stop and prevent further infringements before the Complaint was filed, implied that Defendant *was able* to stop MyLocker's creation and distribution of counterfeit goods. Because there is evidence Defendant never stopped its infringements on Plaintiff's Marks, there is no given reason to think compliance with the Judgment was not self-induced or out of Defendant's control. Defendant has not attempted to communicate with the Court or Plaintiff to explain any circumstance preventing Defendant from complying with the served Order so it seems unlikely that Defendant will respond now with evidence substantial enough to carry their burden.

II.     **This Court has authority to hold MyLocker's CEO, Robert Hake, in contempt on behalf of MyLocker.**

When an order is issued against a corporation, corporate officers, including the sole owner of that corporation, can be held in contempt even if they were not named, or even mentioned, in the order. Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 382 (6th Cir. 2003) (citing Wilson v. United States, 221 U.S. 361, 376 (1911) and United States v. Hochschild, 977 F.2d 208, 212 (6th Cir. 1992), cert. denied, 506 U.S. 1067 (1993)). An officer can be held equally responsible for noncompliance as the corporation itself if they were "responsible for the corporation's conduct and failed to take appropriate action to ensure performance." Gascho v. Glob. Fitness Holdings, LLC, 875 F.3d 795, 803 (6th Cir. 2017) (citing Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 382 (6th Cir. 2003)).

When an officer is made aware of an order against the company and the contents of that order, the Court has personal jurisdiction to hold the officer in contempt. Gascho v. Glob. Fitness Holdings, LLC, 875 F.3d 795, 803 (6th Cir. 2017) (citing Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 382 (6th Cir. 2003)). Whether a corporate officer responsible for the conduct of their corporation simply failed to ensure compliance or took active steps to hinder compliance, that officer is as guilty as the corporation

named in the order. <u>Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co.</u>, 340 F.3d 373, 382-83 (6th Cir. 2003) (quotation omitted).

The CEO of MyLocker, Robert Hake, is also the sole owner and a registered agent for Defendant. *See* Exhibit B, State of Michigan Registered Agent Summary. Plaintiff reached out to Mr. Hake through his LinkedIn account, but despite being served the Judgment by October 1, 2019, Mr. Hake has failed to respond to any part of the present case including the Default Judgment Order at issue here. Moreover, "a Certificate of Service for service of the Motion on MyLocker was entered by the Court on October 1, 2019." (ECF 11). Mr. Hake is in charge of MyLocker's actions but has not taken any steps towards the completing the requirements this Court detailed in the Order. Order Granting Pl. Mot. Default J. PageID.176-177. (ECF 20). The Order itself permanently enjoins the following parties from the actions: "MyLocker, its subsidiaries, affiliates, officers, employees, including but not limited to, agents, distributors, retailers, servants, attorneys, and those in active concert or participation with them…" Order Granting Pl. Mot. Default J. PageID.176-177. (ECF 20). As MyLocker's CEO, Mr. Hake should be subject to the obligations listed in the Order. Instead, Mr. Hake has allowed or even helped MyLocker's continued infringement on Island Jay's trademark rights.

Unfortunately, this not only leaves Island Jay uncompensated for the harm that has already been done but continues to damage the good name and proper

financial benefits of Plaintiff. Jason Guarino Decl. ¶ 4, Ex. A. Because of this, it has become necessary for Island Jay to take measures directly against Mr. Hake to enforce this Court's contempt power.

### III.   **Plaintiff is entitled to the relief already ordered and should receive the further relief requested here for Defendant's continued violations.**

There are two purposes to impose sanctions on a corporation. Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 383 (6th Cir. 2003) (citing United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947)). The first is to enforce the contemnor's compliance with the order that has been violated, and the second is to make sure the movant is compensated for the losses caused by the contemnor's noncompliance. Id.

Courts can impose sanctions on corporate officers if two conditions are met: (1) the sanctions are used to compensate actual losses of the movant, and (2) the officer's willful or deliberate conduct caused those losses. Gascho v. Glob. Fitness Holdings, LLC, 875 F.3d 795, 803 (6th Cir. 2017) (citing Gary's Elec., 340 F.3d at 380, 383 n.13, 385). Mr. Hake has had ample opportunity to comply with the Order, or alternatively to provide any explanation for his failure to take steps in his capacity as CEO to facilitate MyLocker's compliance. Mr. Hake's conduct has also led to MyLocker actively continuing to violate Island Jay's Marks.

If the Court finds Defendant knowing violated its definite and specific Default Judgment Order and that those violations caused Plaintiff losses, Defendant should

be sanctioned accordingly. Plaintiff should be granted relief that both compensates the actual losses it has incurred as well as to incentivize Defendant to comply with the original June 17, 2020 Default Judgment Order and any obligations set out in response to this Motion.

Therefore, Plaintiff requests that this Court order Defendant to comply with the definite and specific steps found in the Default Judgment Order. If taken, these steps will help ensure Plaintiff is compensated for the injuries that Defendant has already caused and that no further harm will be caused to Plaintiff's business.

While enforcing the current Order will help prevent Defendant from continuing to infringe on Plaintiff's Marks, Plaintiff further requests that this Court order Defendants to compensate Island Jay for the harm that increases with each day the Default Judgment Order is not enforced. More specifically, Plaintiff simply seeks to have the Default Judgment Order extended to cover the time that has passed since the Order was filed – when the Order became definite – and the order for this Motion, should it be granted.

## CONCLUSION AND PRAYER FOR RELIEF

Island Jay respectfully asks this Court to find: (1) the details and deadlines in the June 17, 2020 Order are definite and specific enough to be reasonably understood by MyLocker; (2) MyLocker knowingly violated that Order; and (3) MyLocker has

presented no defense of impossibility whatsoever, let alone one that satisfies their obligations under this Court's Order.

For the reasons explained above, Plaintiff Island Jay requests this Court to GRANT PLAINTIFF'S MOTION FOR ORDER HOLDING DEFENDANT IN CONTEMPT FOR FAILURE TO COMPLY WITH DEFAULT JUDGMENT ORDER pursuant Fed.R.Civ.P. 70(e). Plaintiff asks this Court to enforce the Order Granting Plaintiff's Motion for Default Judgment and then to extend the analysis present in the Order to provide the following forms of relief:

1. That Plaintiff receive $150,000.00 in actual losses from lost business and reputational harm;

2. That Plaintiff receive $11,146.32 in damages from attorneys fees;

3. That Plaintiff receive $400.00 in costs;

4. That MyLocker's CEO and sole-owner, Robert Hake, be held jointly and severally liable under the Default Judgment and Order;

5. That Plaintiff receive its attorneys fees incurred in bringing this Motion; and,

6. Any and all other the Court deems proper.

Respectfully submitted this 23rd day of July 2021,

/s/ John M. Shoreman

McFadden & Shoreman
1050 Connecticut Avenue, NW

Suite 1050
Washington, DC  20036
(202) 772-3188
jms@mcfaddenshoreman.com
*Counsel for Plaintiff*

## **LOCAL RULE CERTIFCATION**

I, John M. Shoreman, certify that this document complies with Local Rule 5.1(a),

including: double-spaced (except for quoted materials and footnotes); at least one-

inch margins on the top, sides, and bottom; consecutive page numbering; and type

size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for

non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is

the appropriate length. Local Rule 7.1(d)(3)."

/s/ John M. Shoreman
John M. Shoreman

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing PLAINTIFF'S MOTION FOR ORDER HOLDING DEFENDANT IN CONTEMPT FOR FAILURE TO COMPLY WITH DEFAULT JUDGMENT ORDER and that it was served on the following by CM/ECF, which will automatically send notification of filing to all counsel of record.

Respectfully submitted this 23rd day of July 2021.

/s/ John Shoreman
John Shoreman
McFadden & Shoreman
1050 Connecticut Avenue NW
Suite 500
Washington, DC 20036
(202) 772-3188
jms@mcfaddenshoreman.com
*Counsel for Plaintiff*