# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ISLAND JAY, Inc.,  )
        Plaintiff,  )
                            )      Case No. 19-cv-11501
v.  )      Hon. Mark A. Goldsmith
                            )
MYLOCKER.COM, LLC,  )
        Defendant.  )
_____)

**PLAINTIFF ISLAND JAY'S CONSOLIDATED RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE AND IN REPLY TO DEFENDANT'S RESPONSE IN OPPOSTION TO PLAINTIFF'S MOTION FOR ORDER HOLDING DEFENDANT IN CONTEMPT FOR FAILURE TO COMPLY WITH DEFAULT JUDGMENT**

Plaintiff Island Jay, Inc. ("Island Jay"), through counsel, hereby responds in opposition to defendant's motion to vacate and in reply to defendant's response in opposition to Island Jay's motion for order holding defendant, MyLocker.com, LLC ("MyLocker"), in contempt for failure to comply with default judgment order.

Pursuant to L.R.5.1(a), the undersigned certifies that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). The undersigned also certifies that it is the appropriate length.

# STATEMENT OF ISSUES PRESENTED

(1) Should the Court set aside its default judgment and order under Rule 60(b)(1) where the defendant has failed to demonstrate that the default did not result from its own culpable conduct?

(2) Does a waiver of service signed by the defendant's attorney, pursuant to Rule 4(d), establish that attorney's express authority to waive service of process on behalf of his or her client.

# MOST CONTROLLING AUTHORITY

**Cases**

*O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345 (6th Cir. 2003).

*Tri-Corner Investments LLC v. First Defense Intern. Group, Inc.*, 361 Fed. Appx. 629 (6th Cir. 2010).

*Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290 (6th Cir. 1992).

*Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790 (6th Cir. 2002).

**Rules**

Fed. R. Civ. P. 4(d)

Fed. R. Civ. P. 60(b)(1)

# PROCEDURAL HISTORY

The plaintiff, Island Jay, Inc. ("Island Jay") filed the complaint on May 22, 2019. Compl. (ECF 1). Claims were brought against the defendant, MyLocker.com, LLC ("MyLocker"), for (1) false designation of origin and false descriptions in violation of § 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(a); (2) federal trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114(1); (3) violation of § 3(1) of the Michigan Consumer Protection Act, MCL § 445.903(1); (4) common law trademark and trade name infringement; (5) common law unfair competition and dilution; and (6) common law unjust enrichment. Compl. PageID.2 (ECF 1). MyLocker did not answer or otherwise respond to the complaint. Default J. Order PageID.176 (ECF 20).

At the request of Island Jay, the Clerk of the Court entered default on September 11, 2019. Pl. Req. Clerk's Entry Default (ECF 9). Island Jay filed a motion for default judgment on September 13, 2019. (Pl. Mot. Default J. (ECF 10)); and a certificate of service indicating that MyLocker's counsel was served via email was filed on October 1, 2019. (ECF 11). The Court granted motion for default judgment on June 17, 2020, and ordered MyLocker to be enjoined from specific actions that are in violation of Island Jay's trademark rights. (ECF 20). Robert Hake, MyLocker's CEO and registered agent, was served a copy of the

default judgment and order by U.S. Certified Mail on June 23, 2020. Pl. Supp Br. Motion for Contempt, PageID. 248 (ECF 28).

In response to Island Jay's motion for an order holding Defendant in contempt for failure to comply with the default judgment and order in that it continues to violate Island Jay's trademark rights, MyLocker moved to set aside the default judgment and order of June 17, 2020. (ECF 33, 34).

## BACKGROUND

**(i)    Pre-Litigation Contacts**

Island Jay's complaint sets out multiple examples of MyLocker's infringements of Island Jay's trademarks in willful violation of Island Jay's rights and of federal and state the law. Compl. (ECF 1). Examples of MyLocker's continuing infringements following the filing of the complaint are described in Island Jay's motion for default judgment. Pl. Mot. Default J. (ECF 10).

MyLocker now asserts that its failure to respond to the complaint was excusable neglect and that it has a defense to Island Jay's claims. Neither position is tenable. MyLocker had notice and opportunity to present a defense in response to Island Jay's complaint. There is ample evidence that MyLocker simply chose to ignore Island Jay's complaint and this Court's entry of default.  One essential fact is beyond dispute: MyLocker's corporate attorney received a copy of the complaint

and executed a Waiver of Service on May 28, 2019 [ECF No. 4]. (Tab 1 - Exhibit A).

Island Jay went to extraordinary lengths to make MyLocker aware of its grievances and to avoid having to sue MyLocker. Ultimately, when MyLocker shut down communications and continued to infringe on its trademarks, Island Jay was left with no choice.

MyLocker refers to Island Jay as a competitor. That could not be farther from the truth. Island Jay produces and sells beach apparel and related items that bear Island Jay logos and trademarks, exclusively. (See, generally, [https://www.islandjay.com](https://www.islandjay.com)). (Tab 2: Exhibit B – Declaration of Jason Guarino, at ¶ 2). On the other hand, MyLocker customizes tee-shirt logos its does not own and is tied to a network of third-party websites through which counterfeit products are ordered from, and produced by, MyLocker. (Tab 2, at ¶ 3). MyLocker receives, prints and ships the counterfeit product to the ultimate customer. *Id*. In this case, a consumer orders a product bearing one of Island Jay's logos from a third-party website, but receives it (printed, packaged and shipped) by MyLocker. *Id*. The business models of Island Jay and MyLocker have nothing in common and certainly do not compete. (Tab 2, at ¶ 4).

When MyLocker's infringements came to Island Jay's attention in late 2018 its president, Jason Guarino, immediately reached out by phone in the hope of

curing the infringements as quickly and easily as possible. (Tab 2, at ¶ 5). Mr. Guarino emailed Robert Hake, CEO of MyLocker, on January 9, 2019. *Id*. Finally, on January 25, 2019, Mr. Guarino received an email from MyLocker's corporate counsel, Matthew Norvello. (Tab 2, at ¶ 5, Ex. 1). Thereafter, Mr. Guarino and Mr. Novello corresponded about the infringements until February 6, 2019. *Id*. This email chain ended with Mr. Novello stating that MyLocker would "cut-off any connection/fulfillment" to the offending third party websites. *Id*. MyLocker's representation to the Court that it would have halted the trademark infringements if only it had been alerted by Island Jay in a timely manner is highly questionable given the overwhelming evidence that MyLocker was repeatedly placed on notice of infringements, well before the complaint was filed, but chose to do absolutely nothing about the it, except make promises it never intended to keep.

MyLocker did not stop printing and delivering infringing products, as promised, so on March 18, 2019, Island Jay's Florida counsel sent MyLocker a cease and desist letter addressed to Mr. Hake at MyLocker's primary office address. (Tab 2, at ¶ 6, Ex. 2). The cease and desist letter was copied to Mr Novello via email. *Id*. Mr. Novello responded by stating that MyLocker had "disabled all connections to" one of the third-party websites used to order products infringing on Island Jay's trademarks and that Island Jay was added to internal anti-infringement software system. (Tab 2, at ¶ 7). Nevertheless, about three days

4

later MyLocker printed and shipped yet another counterfeit product. Again, on April 7, 2019, Island Jay notified MyLocker that it had not stopped creating counterfeit goods that infringed on Island Jay's trademarks, contrary to what Mr. Novello had repeatedly told Island Jay. *Id*. Throughout May of 2019, MyLocker continued to infringe on Island Jay's trademarks. No response was made to Island Jay's correspondence of April 7, 2019. *Id*. Ultimately, Island Jay had no choice but to commence litigation. *Id*. MyLocker continues to infringe on Island Jay's trademarks long after the filing of the Complaint and even after entry of the default judgment. *Id*.

**(ii)  Waiver of Service**

Island Jay's prior counsel, Anthony L. DeLuca, was retained by Island Jay following the correspondence between Island Jay's counsel in Florida and Mr. Novello. (Tab 3: Exhibit C – Declaration of Anthony L. DeLuca, at ¶ 1). Mr. DeLuca prepared and filed Island Jay's complaint before to talking to Mr. Novello over the phone, but did not have it served prior to their conversation.  (Tab 3, at ¶ 3). In their conversation, Mr. Novello represented to Mr. DeLuca that he was corporate counsel for MyLocker and that his client was interested in resolving the matter. (Tab 3, at ¶ 2). Mr. Novello agreed to waive service and to provide Mr. DeLuca with a Waiver of Service. (Tab 3, at ¶ 4).  A Waiver of Service bearing Mr. Novello's signature (over an office address used by MyLocker) was

subsequently filed in this case. (Tab 1).  The Waiver of Service indicates Mr. Novello received a copy of the complaint. *Id*.

Island Jay's counsel was not relying on Mr. Novello's *implied* authority to waive service on behalf of his client, MyLocker. Mr. Novello *expressly* acknowledged his authority by directing Mr. DeLuca to provide him a Waiver of Service and then providing Mr. DeLuca with an executed copy for filing with the court. There is no question that Mr. Novello represented MyLocker in the dispute with Island Jay and in other matters. For example, on July 28, 2020, more than a year after he waived service on MyLocker in this case, Mr. Novello represented that he was MyLocker's corporate counsel in a declaration under the penalties of perjury before the U.S. District Court for the Southern District of New York in *Vector Media Group, Inc. v. MyLocker.com, LLC*, Case No. 20-cv-5642. (Tab 4 – Exhibit D). In the declaration Mr. Novello indicates his primary office is co-located with the headquarters of MyLocker: 1300 Rosa Parks Blvd., Detroit, Michigan  48216.

The time to file an answer or responsive pleading having long passed, Mr. DeLuca contacted Mr. Novello to seek concurrence in a motion for default on September 11, 2019. (Tab 3, at ¶ 5). However, Mr. Novello did not respond at that time and the motion for default and permanent injunction was filed. *Id*. Mr. Novello was served with the motion for default via email on September 16, 2021;

6

and default was subsequently entered by the Clerk. *Id*. Afterwards, on October 1, 2019, Mr. Novello contacted Mr. DeLuca and claimed to have made a mistake and missed the filing deadline to answer the complaint. (Tab 3, at ¶ 6).

Mr. DeLuca's co-counsel, Tom Cunningham, joined them on the call. (Tab 3, at ¶ 6). Mr. Novello requested that the default be withdrawn as a "professional courtesy." *Id*. He was told Island Jay would require a consent judgment and attorneys fees. *Id*. Mr. Novello stated that he would discuss the proposal with his client, MyLocker. *Id*. Later in the day, Mr. Novello texted Mr. DeLuca and asked for the amount of attorneys fees. *Id*. Mr. DeLuca provided Mr. Novello that information and never heard from Mr. Novello again. *Id*.

## **LEGAL STANDARD**

**(i)  Set Aside under Rule 60(b)**

MyLocker seeks to set aside the default judgment and order, which is a "final judgment, order, or proceeding," under Federal Rule of Civil Procedure 60(b)(1), which allows consideration of : "mistake, inadvertence, surprise, or excusable neglect." The standard for applying the well-established set-aside factors of *United Coin Meter Co. v. Seaboard Coastline Railroad*, 705 F.2d 839, 844 (6th Cir. 1983) (which assess whether (1) the default was willful, (2) set-aside would prejudice plaintiff, and (3) alleged defense is meritorious) is more demanding under Rule 60(b) than is their application to a motion to set aside

default under Rule 55(c). *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838-39 (6th Cir. 2011) (citing *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 352 (6th Cir. 2003).

"[I]t is important to distinguish between an entry of default and a default judgment." *O.J. Distrib., Inc.*, at 353 (quoting *U.S. v. Real Property & All Furnishings Known as Bridwell's Grocery & Video*, 195 F.3d 819, 820 (6th Cir. 1999). A "stricter standard of review applies for setting aside a default once it has ripened into a judgment." *Id.,* see, also *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). "Once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation, as reflected in Rule 60(b)." *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002).

"[A] party seeking to vacate a default judgment under Rule 60(b)(1) must demonstrate first and foremost that the default did not result from his culpable conduct . . . Only if the moving party makes this showing may the district court proceed to consider the other *United Coin Meter* factors." *Weiss*, 283 F.3d at 794; *Tri-Corner Investments LLC v. First Defense Intern. Group, Inc.*, 361 Fed. Appx. 629, 631 (6th Cir. 2010). In order to show that the default did not result from culpable conduct, a party must demonstrate that the requirements of Rule 60(b)(1)

8

are met, *i.e.*, that the default "was the product of mistake, inadvertence, surprise or excusable neglect." *Weiss*, 283 F.3d at 794 (quoting *Waifersong,* 976 at 292); *Tri-Corner Investments LLC,* at 631.

## ARGUMENT

### (i) Motion to Set Aside Lacks Merit

MyLocker's claim that Mr. Novello, its long-time corporate counsel, was not authorized to waive service on its behalf, and that it did not receive notice of the complaint and default judgment until Island Jay's motion for contempt was filed strains credulity. Mr. Novello made an express representation that he had authority to waive service to Island Jay's counsel, then executed and returned to Island Jay's counsel a Waiver of Service acknowledgment form. (Tabs 1 and 3). The claim that Mr. Novello did not inform MyLocker, his client, first of the complaint and then of the entry of default is belied by Mr. Novello's conversation with Mr. DeLuca in which he stated he was taking a settlement proposal (consent judgment and attorneys fees) to his client for consideration. (Tab 3).

The evidence is overwhelming that Mr. Novello had authority to waive service and did in fact inform MyLocker of the pending action. MyLocker cannot demonstrate that its failure to answer did not result from its own culpable conduct, as is required. See *Weiss*, 283 F.3d at 794. Clearly, MyLocker willfully chose to ignore Island Jay's complaint and the default judgment right up until the point

where a motion for contempt, which implicated Mr. Hake personally, was filed. Only then, almost three years after the complaint was filed, did MyLocker decide to make an appearance. MyLocker engaged in culpable conduct by simply ignoring Island Jay's grievances prior to litigation, ignoring the complaint after waiving service, and finally ignoring the default judgment and order.

Even if MyLocker's "defenses" were to be considered, they must be found to to be insufficient and lacking in merit. Island Jay does not compete with MyLocker in any fashion. Island Jay sells its own, original brands. MyLocker prints logos that it does not own and exists to support and profit from a shadowy network of web-based trademark infringers. It is not a defense that Island Jay makes discrete orders of counterfeit products that infringe its own trademarks from third-party websites and MyLocker. It is an enforcement mechanism that allows Island Jay to determine if infringement is occurring and which entities (such as MyLocker) are engaging in the practice. (Tab 2, ¶ 8). Further, the alleged defense of defective service is obviously refuted by the incontestability of the waiver of service execute by MyLocker's attorney, pursuant to Rule 4(b).

Moreover, setting aside the default judgment and returning this case to the pleading stage would be enormously prejudicial to Island Jay. The default judgment is a final order that has assessed damages and imposed injunctive relief. The default judgment was entered more than 18 months ago. Public policy favors

the finality of judgments and termination of litigation. *Weiss,* 283 F.3d at 794 (6th Cir. 2002). Island Jay would lose the benefits of the default judgment and be required to incur the expense of litigating claims that were all but acknowledged as *bona fide* by MyLocker. (Tab 2, ¶ 5). MyLocker knowingly and willfully allowed this case to proceed to default judgment by taking no part in the litigation following its counsel's waiver of service. Vacating the default judgment under these circumstances is tantamount is to rewarding bad behavior.

The cases cited by MyLocker to establish that authorization to accept service of process is not implied by the attorney-client relationship are inapposite. MyLocker's attorney, Mr. Novello, had express authority to waive service of process and exhibited as much by signing and returning a Waiver of Service acknowledgment form to Island Jay's counsel. The cases relied on by MyLocker involve instances where an attorney was served with process on the basis of what a plaintiff claimed to be the attorney's *implied* authority to accept service of process. See, e.g., *Schultz v. Schultz*, 436 F.2d 635 (7th Cir. 1071); and *Arthur v. Litton Loan Servicing LP,* 249 F. Supp. 2d 924 (E.D. Tenn. 2002) . MyLocker offers no authority to support its theory that a waiver of service, executed by an attorney, is not confirmation of that attorney's express authority to waive service on behalf of his or her client.

**(ii) Contempt is a Justifiable Sanction**

Island Jay has shown above that MyLocker's failure to comply with the requirements of the default judgment and order was willful and that the company's CEO, Robert Hake, is culpable for the conduct of MyLocker. No legitimate excuse is offered by MyLocker for ignoring this Court's explicit order and continuing in its infringement practices.

WHEREFORE, Island Jay prays this Court enter an order denying MyLocker's motion to set aside the judgment and granting Island Jay's motion for an order holding MyLocker in Contempt.

Respectfully submitted this 18th day of February, 2022.

*/s/ John M. Shoreman*
John M. Shoreman
McFadden & Shoreman
1050 Connecticut Ave., NW
Suite 500
Washington, DC  20036
jms@mcfaddenshoreman.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2022, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ John M. Shoreman*