# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISLAND JAY, INC.,
        Plaintiff,

v.

MYLOCKER.COM, LLC,
        Defendant.

Case No. 19-11501

## DECLARATION OF JASON GUARINO

1. I am founder and President of the plaintiff Island Jay, Inc. ("Island Jay").

2. Island Jay produces and sells beach apparel and goods that bear its unique logos and registered trademarks. Among its trademarks are those cited in the Complaint in this case: "Island Jay" (U.S. Reg. No. 4451253); "Not a Worry In the World" (U.S. Reg. No. 4447880); "If I Can't Wear Flip Flops I Don't Want 2 Go" (U.S. Reg. No. 4906521); "I'm the Cabana Boy" (U.S. Reg. No. 5818096); and "I'm Not Waiting Til 5!" (U.S. Reg. No. 576881). See, generally, https://www.islandjay.com.

3. The business model of MyLocker.com LLC ("MyLocker") is entirely different. MyLocker sells and delivers customized apparel. MyLocker has a website (https://mylocker.net) that it uses to sell products personalized "with your logo." MyLocker's website is connected to a network of third-party websites through which counterfeit products are ordered from MyLocker. MyLocker receives, prints and ships the counterfeit product to the ultimate customer. In my experience many third-party counterfeit websites operate outside the U.S. (many in Veitnam and China). The foreign companies often use a U.S. company (such as MyLocker) who is willing to deal with a counterfeiting network, to produce and ship counterfeit products directly to U.S. consumers.

4. Island Jay is not a competitor of MyLocker. When MyLocker sells a product bearing an Island Jay trademarked logo, it does so without license and in violation of the law. Island Jay does not print customized logos at the request of third parties and fulfill orders on their behalf. These are two entirely different business models.

5. When MyLocker's infringement of Island Jay's trademarks first came to my attention, I made numerous attempts to contact the company. Over a five-week period from December 18, 2018 through January 25, 2019, I made numerous phone calls, none of which were returned. On January 9, 2019, I emailed Mr. Robert Hake, CEO of MyLocker. I received a response from MyLocker's attorney, Matthew Novello, on January 25, 2019. From that date until February 6, 2019, Mr. Novello and I exchanged several emails and spoke over the phone. Mr. Hake was copied on the initial exchange of emails. MyLocker was provided details of the infringements and third-party websites that were selling Island Jay counterfeit products through MyLocker. The correspondence ended on February 6, 2019, with Mr. Novello stating that MyLocker would "cut-off any connection/fulfillment" to the offending third-party websites. A copy of my email correspondence with MyLocker (Jan. 25 – Feb. 6, 2019) is attached hereto as Exhibit 1.

6. Unfortunately, MyLocker did not stop printing and delivering products that infringed on Island Jay's trademarks, as promised. On March 18, 2019, Island Jay's Florida counsel sent MyLocker a cease and desist letter addressed to Mr. Hake at MyLockers's primary office address. The cease and desist letter was copied to Mr. Novello via email. A copy of the cease and desist letter is attached hereto as Exhibit 2.

7. Mr. Novello responded by stating that MyLocker had "disabled all connections to" one of the third-party websites used to order products infringing on Island Jay's trademarks

and that Island Jay was added to internal anti-infringement software system. Nevertheless, about three days later MyLocker printed and shipped yet another counterfeit product. Again, on April 7, 2019, Island Jay notified MyLocker that it had not stopped creating counterfeit goods that infringed on Island Jay's trademarks, contrary to what Mr. Novello had repeatedly told Island Jay. Throughout May of 2019, MyLocker continued to infringe on Island Jay's trademarks. No response was made to Island Jay's correspondence of April 7, 2019. Ultimately, Island Jay had no choice but to commence litigation. MyLocker continues to infringe on Island Jay's trademarks long after the filing of the Complaint and even after entry of the default judgment.

8. Island Jay on occasion does arrange for the purchase of products that infringe on its trademarks in its effort to determine whether a U.S. company (as in the case of MyLocker) is printing and shipping on those orders. This practice is an effective way to determine which U.S. company (such as MyLocker) is engaged in infringement activities so that enforcement action may be taken to protect Island Jay's valuable intellectual property from theft. There is no way to determine the total amount in counterfeit sales and calculate actual lost revenue to Island caused by the activities of a counterfeiter like MyLocker without disclosures compelled in the discovery process. A process that MyLocker has attempted to avoid in this case.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of February, 2022.

_____
Jason Guarino

**EXHIBIT 1**



Jason Guarino <jay@islandjay.com>

---

## Trademark Issue & No Response?
14 messages

---

**Jason Guarino** <jay@islandjay.com>  
To: robert@mylocker.net

Wed, Jan 9, 2019 at 4:10 PM

Hello Robert,

I would like to bring to your attention that My Locker is printing counterfeit goods from my trademarked brand, Island Jay. I understand that you likely are not aware of this issue, which is why I am attempting to informally resolve this without our attorney getting involved.

I have made several attempts to reach out to your company with no response over the past 2 weeks. This includes 2 emails, 2 voice messages, and 2 facebook messages. I am reaching out to you directly as a last attempt before I pass this onto my attorney to send a C&D.

Please let me know whom I can work with at your company to point out what web sites are illegally selling knock offs of my products and using your printing services.

Thank you,
Jason Guarino
--



**Jason Guarino - Owner**  
**p:** Direct 727-488-8575 | **e:** Jay@IslandJay.com  
IslandJay.com | Oldsmar, FL | Londonderry, NH

---

**mnovello@novellolawfirm.com** <mnovello@novellolawfirm.com>  
To: jay@islandjay.com  
Cc: Robert Hake <robert@mylocker.net>

Fri, Jan 25, 2019 at 11:54 AM

Jason,

Your email was forwarded to me, as I represent MyLocker. My client takes claims such as this very seriously, and has no intention of infringing on rightful IP. Please let me know when you have a few moments to discuss resolution of this situation, as well as providing the details sufficient to resolve the matter appropriately and quickly. I can be free portions of this afternoon, or throughout next week.

Regards,
Matt Novello

248 885-0011

[Quoted text hidden]

---

**Jason Guarino** <jay@islandjay.com>  
To: mnovello@novellolawfirm.com  
Cc: Robert Hake <robert@mylocker.net>

Fri, Jan 25, 2019 at 12:36 PM

Matt

Thank you for responding. I am well aware that My Locker probably did not know about the IP issue. My goal was to simply provide the resources they need to know that your client is printing counterfeit goods. Honestly, the lack of response for a month made me think that My Locker had no intention of resolving the matter. I hope that is not the case.

We have a number of trademarks and DMCA issues we have been fighting for over 9 months rom many tee printers and sites. I stopped counting once we submitted over 300 take down notices in 2018. We have had good results by working with companies like Amazon, Ebay, Etsy, Shopify, Big Commerce, Paypal, and Stripe to remove the content from the web or work with other printers similar to My Locker. A number of counterfeit online sellers appear to be using hosting companies that ignore IP Claims and many of them use USA based garment printers like My Locker to process and send out the goods.

Many of these TM/DMCA issues revolve around our TM filed back in August for the brand "I'm The Cabana Boy", serial # 88094322.
Additionally, the phrase following that Trademark have been knocked off both in text and style, making it also a DMCA issue.
"I'm The Cabana Boy Bartender   Snack Fetcher   Towel Grabber  Lotion Application  Personal Services"

We first posted about this design here on Facebook
https://www.facebook.com/IslandJay/photos/a.182857105171550/831418783648709/?type=3&theater

Our brand landing page with our product is at
https://islandjay.com/collections/im-the-cabana-boy

The good news many of these websites have closed up that were using My Locker. The links below are the current sites. We placed orders with them and it was easy to track the address back to My Locker.
https://cupofteee.com/home/27018-1386864-i-m-the-cabana-boy-tshirt.html
https://cupofteee.com/home/153805-9575834-i-m-the-cabana-boy-tshirt.html
https://cupofteee.com/home/154929-9654911-i-m-the-cabana-boy-t-shirt.html
https://cupofteee.com/home/32044-1538535-i-m-the-cabana-boy-shirt.html
https://cupofteee.com/home/27018-1386864-i-m-the-cabana-boy-tshirt.html
https://cupofteee.com/home/156383-9759756-i-m-the-cabana-boy-men-t-shirt.html
https://familyrics.com/home/202909-12932063-i-m-the-cabana-boy-t-shirt.html

My goal is to work with My Locker to prevent the printing of counterfeit goods of my brands. When I present proof that you are responsible for printing knock offs from my brand, just as I do with other printers, I need it to stop immediately. If this can be achieved then we can have a working relationship that does not involve C&D's and attorneys.

Thank you,
Jason Guarino
727-488-8575

[Quoted text hidden]

---

mnovello@novellolawfirm.com <mnovello@novellolawfirm.com>  Fri, Jan 25, 2019 at 12:56 PM
To: Jason Guarino <jay@islandjay.com>
Cc: Robert Hake <robert@mylocker.net>

Thanks for the background information on your IP as well as the sites at issue. I can assure you that my client was not aware and has absolutely no intention of participating in any such scheme, and just so you are aware, my client is not the site operator, creator, designer, marketer or anything even close to those that generated the ideas or concepts that show up in those sites, but is simply a fulfilment resource for online orders. I can explain in more detail on a short call, which will put your mind at ease.

Let's plan on speaking early next week on resolving this matter, after I have had a chance to coordinate the appropriate options for disabling any connection my client has to these sites.

Regards,
Matt Novello

[Quoted text hidden]

---

**Jason Guarino** <jay@islandjay.com>  
To: mnovello@novellolawfirm.com  
Cc: Robert Hake <robert@mylocker.net>
       Fri, Jan 25, 2019 at 3:26 PM

Hello Matt
Sounds good and I can understand that. I am around next week to chat and I would look forward to it.
Thank you
Jason

[Quoted text hidden]

---

mnovello@novellolawfirm.com <mnovello@novellolawfirm.com>  
To: Jason Guarino <jay@islandjay.com>
       Mon, Jan 28, 2019 at 10:25 AM

Jason,

What is a number where I can reach you, later today or tomorrow?

From: Jason Guarino <jay@islandjay.com>
Sent: Friday, January 25, 2019 3:27 PM

[Quoted text hidden]

[Quoted text hidden]

---

**Jason Guarino** <jay@islandjay.com>  
To: mnovello@novellolawfirm.com
       Mon, Jan 28, 2019 at 10:35 AM

Sure, 727-488-8575

Jason
[Quoted text hidden]

---

**Jason Guarino** <jay@islandjay.com>  
To: mnovello@novellolawfirm.com
       Tue, Feb 5, 2019 at 10:17 AM

I have not heard from you regarding the matter.
Jason
[Quoted text hidden]

---

mnovello@novellolawfirm.com <mnovello@novellolawfirm.com>  
To: Jason Guarino <jay@islandjay.com>
       Tue, Feb 5, 2019 at 10:49 AM

Apologies.  Busy few weeks.

I'll call you shortly.

[Quoted text hidden]

---

**Jason Guarino** <jay@islandjay.com>
       Tue, Feb 5, 2019 at 11:07 AM

To: mnovello@novellolawfirm.com

No problem. I am available after 1pm EST today and anytime tomorrow.
[Quoted text hidden]

---

**mnovello@novellolawfirm.com** <mnovello@novellolawfirm.com>
To: Jason Guarino <jay@islandjay.com>

Tue, Feb 5, 2019 at 4:55 PM

How's tomorrow morning?  Say 11am?

**From:** Jason Guarino <jay@islandjay.com>
**Sent:** Tuesday, February 5, 2019 11:08 AM

[Quoted text hidden]

[Quoted text hidden]

---

**Jason Guarino** <jay@islandjay.com>
To: mnovello@novellolawfirm.com

Wed, Feb 6, 2019 at 7:42 AM

Sure, I am around after 9 am
[Quoted text hidden]

---

**mnovello@novellolawfirm.com** <mnovello@novellolawfirm.com>
To: Jason Guarino <jay@islandjay.com>

Wed, Feb 6, 2019 at 1:53 PM

Thanks for the call earlier Jason.  Good luck with your father as well.

Like we discussed, I will ask my client to cutoff any connection/fulfillment to the stores in question, as well as find any details available on the actual shop owner/operator.  This may take a few weeks, but I will get it in process.

Separately, please send me a photo of the label with the addresses you mentioned.

Let's talk again next week about getting this resolved.  Regards,

Matt Novello

248-885-0011

**From:** Jason Guarino <jay@islandjay.com>
**Sent:** Wednesday, February 6, 2019 7:42 AM

[Quoted text hidden]

[Quoted text hidden]

**Jason Guarino** <jay@islandjay.com>  
To: mnovello@novellolawfirm.com

Wed, Feb 6, 2019 at 1:56 PM

Sounds good and thank you.  
Attached  
Thank you  
Jason



[Quoted text hidden]




**EXHIBIT 2**

*Law Office of*
## MICHAEL GONZALEZ, P.A.

**VIA CERTIFIED MAIL**

March 18, 2019

Robert Hake
Mylocker.com, L.L.C.
1300 Rosa Parks Blvd.
Detroit, MI 48216

RE: Our Client: Island Jay, Inc./Jason Guarino
Matter: Infringement of Trademark Rights of Island Jay, Inc./Jason Guarino

Dear Mr. Hake:

Please be advised that this law firm represents Island Jay, Inc. in connection with its intellectual property rights. Our client is the owner of an online Island and Beach inspired t-shirt and accessory store called Island Jay, Inc. The online store, IslandJay.com, offers high quality products throughout the United States and has continually used its logo, "I'm the Cabana Boy," on its products, as well as to promote and advertise the Island Jay brand. It has come to our attention that despite prior communications to your company, your company continued to produce t-shirts with our client's trademarked logo, to wit, "I'm the Cabana Boy". Your prior use of "I'm The Cabana Boy" trademark and continued use of it is a violation of our client's trademark rights. There is no record of you and/or your company having any license to use this trademarked logo and this letter constitutes our client's demand that you **cease and desist** any and all use its trademarked logo.

If Mylocker.com L.L.C. does not have a license, use of the logo, design, or phrase of "I'm the Cabana Boy" constitutes a violation under the Lanham Act 15 U.S.C. § 1114. As the violations occurred by your company's unauthorized printing of "I'm the Cabana Boy", and through sale of items bearing the trademark, the company is liable for the unauthorized use. Even if your use of the name without a license was unintentional, which in this case it clearly was not, it is still a violation of trademark law, and ceasing use may now reduce liability, but will not release you or Mylocker.com L.L.C. from liability.

While our client presently has a right to bring a lawsuit for damages, it is willing to settle this in an amicable way and we are contacting you to see if an amicable resolution to this issue can be attained. If forced to go to court, our client intends to ask for the maximum relief possible. This includes injunctive relief and may include monetary damages including (1) loss of profits (2)

5001 W. Cypress St., Tampa, FL 33607
Telephone: (813) 282-7800 Fax: (813) 282-7806

Robert Hake
March 18, 2019
Page 2

damages sustained by my client, and (3) cost of action. 15 U.S.C. §1117 (a) In the alternative, my client may elect to pursue Statutory Damages for the sale and offer of sale of products bearing the counterfeit mark, of a maximum of $200,000 per each unintentional sale or offer of sale of products bearing the counterfeit mark and a maximum of $2,000,000 per each willful use of counterfeit mark. If you have been previously contacted by my client with a request to cease and desist, your continued use will be considered willful. In an effort to achieve a resolution of this matter at this time, demand is hereby made for the tender of $25,000.00 on or before April 18, 2019. Check is to be made out to the Law Office of Michael Gonzalez, P.A., Trust Account, reference to Island Jay, Inc. on the check memo.

If it is not your intention to remediate this matter on or before April 18, 2018, please advise my office so that we may proceed accordingly.

Sincerely,

Michael Gonzalez, Esq.

MG/JI

cc: Matt Novello
via email:mnovello@novellolawfirm.com