UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISLAND JAY, INC.,

        Plaintiff,

v.

MYLOCKER.COM, L.L.C.,

        Defendant.

_____/

Case No. 19-11501
HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT (Dkt. 44)**

Before the Court is Defendant MyLocker.com, L.L.C.'s motion to set aside the default judgment entered by this Court in a trademark infringement suit initiated by Plaintiff Island Jay, Inc. (Dkt. 44). For the reasons that follow, the Court denies MyLocker's motion.[1]

## I. BACKGROUND

MyLocker argues that the default judgment entered against it is void because service was not properly waived. It contends that its corporate counsel, who executed a waiver of service form, had no authority to do so, and that certain requirements for use of the form were not met. The facts relevant to these contentions are set forth below.

### A. "Handling" Infringement Disputes

Island Jay brought the present dispute to MyLocker's attention on January 9, 2019, when Jason Guarino—Island Jay's owner and president—sent an email to Robert Hake, MyLocker's CEO, sole owner, and (at that time) registered agent. See Guarino Email at PageID.556 (Dkt. 50-

---

[1] In addition to the motion, the briefing includes Island Jay's response (Dkt. 51) and MyLocker's reply (Dkt. 55). The Court held an evidentiary hearing on February 9, 2023, see Tr. (Dkt. 61), after which each party filed a brief in support of its proposed findings of fact and conclusions of law, see Pl. Br. (Dkt. 64); Def. Br. (Dkt. 63).

5). Noting that he had made "several attempts to reach out" to MyLocker, Guarino asserted that MyLocker was "printing counterfeit goods from [Island Jay's] trademarked brand." Id.

Hake testified that he remembered receiving Guarino's email, and he "forwarded that [email] to Matt Novello in [Hake's] office." Tr. at 17. Novello identified himself as MyLocker's "corporate counsel." Id. at 48. Hake explained that Novello was an attorney who "would handle" certain "legal grievance[s]" and "legal things." Id. at 17. Novello's office was on the same floor as Hake's office, about 100 feet away. Id. at 29, 49–50.

Hake testified that, in general, when MyLocker received a grievance concerning an infringement dispute, the issue "would be forwarded to Matt Novello, and Matt Novello would handle it." Hake Dep. at 31 (Dkt. 50-3); see also id. at 22 (explaining that, when MyLocker is faced with an infringement issue like that presented by Island Jay, "Matt has typically handled any of these issues that occur within our operation"). Hake stated that he "assumed that [Novello] was handling" the Island Jay dispute "like he ha[d] in the past." Id. at 36.

"Handling" legal matters for MyLocker sometimes meant accepting or waiving service. When asked if he accepted service on behalf of MyLocker generally, Novello testified: "I don't recall one way or the other. I know some matters, umm, that happened when I was there I did work on and some I would refer out to other sources." Tr. at 51. Hake denied that he had authorized Novello to accept service, and Novello at times during the hearing denied that he had received this authorization, too. See id. at 39, 66. However, when directly asked if he was authorized to accept service, Novello also stated: "That's a tough question. I know this and I was just trying to work out a solution. I don't think—yeah, I think I was just trying to get to a solution, umm, you know, kind of keep the discussion going." Id. at 51–52.

Situations occasionally "happened"—in Novello's words—when he accepted service. Tr. at 51. For example, Island Jay has identified a separate infringement suit for which Novello

2

accepted service on behalf of MyLocker: Sanrio Co., Ltd., et al. v. MyLocker.com, et al., Case No. 2:19-cv-06475-FMO (C.D. Cal.). See Sanrio Acknowledgment (Dkt. 51-2) (containing Novello's signature as corporate counsel for MyLocker acknowledging receipt of summons and complaint); Tr. at 53 (reflecting Novello's testimony that signature on acknowledgement "could be" his signature). Novello recalled that he had accepted service in Sanrio as part of his process for "trying to work out solutions." Tr. at 53. Hake submits that he was not aware that the suit existed or that a default judgment had been entered against MyLocker in Sanrio until 2022. See id. at 27–28. However, Island Jay observes that MyLocker did not argue in that action that Novello was not authorized to accept service, Resp. to Renewed Mot. at 13, which MyLocker does not deny.

Hake also acknowledges that he authorized Novello to represent MyLocker and to file an answer in a different action concerning a contract dispute: Vector Media Grp., Inc. v. MyLocker.com, LLC, Case No. 20-cv-5642 (S.D.N.Y.). See Tr. at 18–21. That action similarly resulted in a default judgment against MyLocker. See Vector Media, 2020 WL 5371195, at *1–*3 (S.D.N.Y. Sept. 8, 2020). Novello recalled that he accepted service of an arbitration demand in Vector Media. Tr. at 57. Island Jay again submits that MyLocker never challenged service in that action, see Resp. to Renewed Mot. at 11, which MyLocker again does not deny.

**B. Novello's Communications with Island Jay and Waiver of Service**

On January 25, 2019, Novello responded to the email that Guarino had initially sent to Hake, stating: "Your email was forwarded to me, as I represent MyLocker." Guarino Email at PageID.556. Novello assured Guarino that his "client takes claims such as this very seriously," and he expressed interest in "discuss[ing] resolution." Id. Hake was copied on this email and on subsequent January 25 emails in which Novello and Guarino agreed to set up a call. Id. at PageID.566–568. This email chain reflects that Novello and Guarino remained in contact through at least February 6, without Hake copied after January 25. Id. at PageID.561.

3

On May 22, 2019, Island Jay filed a complaint in this Court, initiating the present action against MyLocker (Dkt. 1).

On May 24, 2019, email records reflect that Anthony DeLuca—attorney for Island Jay—reached out to Novello to set up a call. See DeLuca Email at PageID.600 (Dkt. 51-5). On May 28, referencing their "discussion [that] morning," DeLuca emailed Novello a copy of the complaint and a "waiver of service." Id. at PageID.602. DeLuca asked Novello to "sign the waiver and return it" so that DeLuca could "file it with the Court." Id. Not having received a response, DeLuca emailed Novello again on May 29, requesting that Novello "return the waiver of service so [DeLuca could] enter it." Id. at PageID.604. On May 30, Novello responded to DeLuca's email, stating: "Here is the waiver. Let's find some time to discuss resolving tomorrow." Id. at PageID.608.

On May 30, 2019, Island Jay filed with this Court a waiver of service form executed by Novello. Waiver of Service (Dkt. 4). The waiver form identifies MyLocker as the "party waiving service of summons." Id. It states that the signer "agree[s] to save the expense of serving a summons and complaint" and "waive[s] any objections to the absence of a summons or of service." Id. It further states:

> I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from 05/28/2019, the date when this request was sent . . . . If I fail to do so, a default judgment will be entered against me or the entity I represent.

Id. Novello does not recall returning the signed waiver to DeLuca, but he "believe[s]" the signature on the form is his signature, and he remembers "discussing . . . trying to get to a resolution" with DeLuca. Tr. at 51. He also stated that he "signed it to get time to see if we could work a deal." Id. at 60. Novello testified that he does not "believe" he ever told Hake that Island Jay had filed a complaint against MyLocker. Id. at 59.

**C. Entry of Default and Default Judgment Against MyLocker**

4

DeLuca states in a signed declaration that Novello subsequently "ignored multiple attempts by me to communicate about resolution of the case." DeLuca Decl. at 1 (Dkt. 51-4); see also DeLuca Email at PageID.610 (reflecting DeLuca's June 19, 2019 email to Novello stating that DeLuca had not "heard from [Novello] since the end of May").

On September 9, 2019, Island Jay filed a request for an entry of default (Dkt. 8), which the Clerk of the Court entered on the same day (Dkt. 9). On September 13, Island Jay filed a motion for default judgment (Dkt. 10).

DeLuca submits that he and his co-counsel had a conversation with Novello on October 1, 2019 during which Novello "claimed that he had made a mistake and missed the filing deadline to answer the Complaint." DeLuca Decl. at 2. After Island Jay's counsel suggested that Island Jay might lift the default in exchange for relief including attorney fees, Novello asked DeLuca for "the amount of attorneys' fees," which DeLuca states he provided. Id. DeLuca submits: "That was my last contact with Mr. Novello." Id. Novello also remembered speaking with DeLuca after the default was entered. Tr. at 62. When asked if he told DeLuca that he was not authorized to accept service on behalf of MyLocker at this time, Novello stated: "I don't know if I said that, but we talked about getting it resolved." Id. at 62–63.

Email records reflect that Novello received further notice of the default in the present action on September 26, 2019, when he received an email from William Shield, Jr. with the law firm Dickinson Wright PLLC. See Shield Email (Dkt. 51-6). Dickinson Wright represented MyLocker in relation to financing MyLocker's expansion of its facilities in 2019. See Hake Dep. at 46–47; Tr. at 64. Shield informed Novello that a "default judgment ha[d] been entered against Mylocker" in this action, see Shield Email—by which he must have meant the default, which had been entered by the clerk a few days earlier, as no default judgment would be entered until some eight months later. Shield asked Novello to have the "attorney handling this matter" call him. Id.

5

On June 17, 2020, this Court granted Island Jay's motion for default judgment (Dkt. 20) and entered a default judgment against MyLocker in the amount of $161,546.32 (Dkt. 21).

Hake testified that he learned about the default judgment at about this time, though Hake's testimony is inconsistent. Hake explained that Novello left MyLocker "around 2020," and when asked if he was "aware at the time [Novello] quit that [MyLocker] had a default judgment in the Island Jay case," Hake responded, possibly referring to the 2019 default: "Yes. Back in the beginning of 2020, I found that out . . . ." Tr. at 30–31; see also id. at 32 (reflecting Hake's testimony that he "found out about the judgments entered against [his] company in the beginning of 2020" and that he "hadn't heard about anything about [sic] any complaints until 2020").

Island Jay also submits that it mailed a copy of the default judgment entered by this Court to MyLocker in June 2020. See Pl. Br. at 6; Pl. Proposed Findings at 5. A certified mail receipt confirms delivery of an unspecified document—the default judgment, in Island Jay's view, see Br. in Supp. Resp. at 17—on June 23, 2020. See USPS Tracking Receipt (Dkt. 28-1). MyLocker does not admit to receiving the default judgment, but it filed a copy of the correspondence "purportedly" delivered to MyLocker at this time: a letter dated June 18, 2020 addressed to Hake stating that it encloses "notice of entry of a Default Judgment and Order issued against MyLocker.com, L.L.C." Br. in Supp. Mot. at 8 (citing 6/18/20 Letter (Dkt. 44-5) (attaching default judgment)). When Hake was asked if he saw a copy of the default judgment delivered to MyLocker on June 23, 2020, Hake initially confirmed receipt, explaining: "the mail goes into our finance department and my finance guy came into my office and said hey, we got a default judgment on a case, umm, from Island Jay . . . ." Tr. at 33. However, Hake recanted on this timeline during subsequent examination by his counsel, stating that he was "nervous" and claiming he had not learned about the Island Jay lawsuit until the beginning of 2022. Id. at 34, 36.

**D. Present Motion**

6

On July 27, 2021, Island Jay moved for an order holding MyLocker in contempt for failing to comply with the default judgment order. See Pl. Mot. for Contempt (Dkt. 24). After a hearing on this motion, Island Jay asserted in a January 20, 2022 filing that it was "re-serv[ing]" the motion for contempt on MyLocker and Hake. Pl. Suppl. to Mot. for Contempt at 2 (Dkt. 28). On January 28, 2022, counsel appeared for MyLocker in this action for the first time (Dkts. 29–31).

In MyLocker's view of the facts, it was about this time—"2022 in the beginning of the year," Tr. at 36—that Hake finally learned about the Island Jay lawsuit.

On February 4, 2022, MyLocker moved to set aside the default judgment, arguing for the first time that Novello was not authorized to accept or waive service (Dkt. 33). In view of upcoming facilitation and the need for discovery, the Court initially denied the motion without prejudice and set a discovery schedule regarding the issues raised by the motion. See 3/11/22 Order (Dkt. 39); 4/19/22 Order (Dkt. 41). Now before the Court is MyLocker's renewed motion to set aside the default judgment under Federal Rule of Civil Procedure 60(b).

## II. ANALYSIS

Federal Rule of Civil Procedure 50(c) states that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 50(c). Rule 60(b) enumerates reasons for which a court, "[o]n motion and just terms, may relieve a party or its legal representative from a final judgment," including "excusable neglect," Fed. R. Civ. P. 60(b)(1), and that "the judgment is void," Fed. R. Civ. P. 60(b)(4). Courts have found that improper service constitutes both excusable neglect and a ground for finding the judgment void. See Davis v. Bank of New York, No. CIV. 06-12534, 2008 WL 793589, at *1 (E.D. Mich. Mar. 18, 2008). Because sustaining MyLocker's contention that service was not properly waived would mean the Court lacks personal jurisdiction, MyLocker's "claim is best construed as one for relief from a void judgment under Rule 60(b)(4)." McGehee v. Diversified Glob. Servs., LLC, No. 3:14-

7

1684, 2017 WL 1036432, at *3 (M.D. Tenn. Mar. 17, 2017), report and recommendation adopted, No. 3:14-cv-01684, 2017 WL 4310096 (M.D. Tenn. Sept. 28, 2017).[2]

MyLocker argues that service was deficient because (i) Novello was not authorized to accept or waive service on behalf of MyLocker, and (ii) MyLocker's email sending Novello the complaint and waiver form did not meet technical requirements of Federal Rule of Civil Procedure 4. The Court finds that neither argument has merit.

### A. Whether Novello Was Authorized to Waive Service

A defendant's authorization of an agent to accept or waive service on its behalf "'need not be explicit, but it must either be express or implied from the type of relationship between defendant and the alleged agent.'" Tindle v. Xenos, No. 09-cv-14826, 2010 WL 4739787, at *2 (E.D. Mich. Nov. 16, 2010) (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1097, at 84–85 (2d ed.1987)) (punctuation modified).

MyLocker correctly points to case law establishing that an attorney-client relationship, without more, is insufficient to authorize an attorney to accept or waive service on behalf of a client. See, e.g., Arthur v. Litton Loan Servicing LP, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002) (finding service on attorney insufficient where "plaintiffs ha[d] not come forward with any proof that [defendant] specifically authorized [attorney] to act [as] its agent to receive service of process"). Rather, "[t]he critical inquiry in evaluating an attorney's authority to receive [or accept] process is whether the client acted in a manner that expressly or impliedly indicated the grant of

---

[2] As to which party bears the burden of proof when a defendant challenges service after the entry of default judgment, authorities are "split," and the United States Court of Appeals for the Sixth Circuit "has not yet addressed this issue." McGehee, at 2017 WL 1036432, at *3–*4. However, like in McGehee, that question "need not be resolved in this case," as the result is the same wherever the burden lies. Id. at *4.

8

such authority." Evony, LLC v. Aeria Games & Ent., Inc., No. C 11-0141 SBA, 2012 WL 12843210, at *8 (N.D. Cal. Sept. 28, 2012).³

MyLocker points to cases where there was "no indication that [defendant's] counsel [was] authorized to accept service on her behalf," AFT Mich. v. Project Veritas, No. 17-cv-13292, 2017 WL 6032550, at *2–*3 (E.D. Mich. Dec. 6, 2017), and "no evidence" that the client intended to authorize an attorney to accept or receive process, Davis v. Nat'l Collegiate Student Loan Tr. 2005-3, No. 16-10831, 2016 WL 4261680, at *1 (E.D. Mich. July 12, 2016), report and recommendation adopted, No. 16-10831, 2016 WL 4239709 (E.D. Mich. Aug. 10, 2016); see also Tindle, 2010 WL 4739787, at *2 (finding no authorization for attorneys to accept service where it was "not apparent" that there was even "an attorney-client relationship").

This case, in contrast, does not lack for such evidence. Several facts establish that Novello was authorized to accept and waive service on behalf of MyLocker for Island Jay's suit. Novello served as corporate counsel for the company, see Tr. at 48, and corporate counsel is often authorized to accept service. Though Novello considered it a "tough question" in hindsight when asked whether he was authorized to accept service, he conceded that his acceptance of service sometimes "happened," id. at 55. The record demonstrates that he accepted service in cases like Sanrio and Media Vector—the former of which was, like this matter, an infringement case. It was in this context that Hake forwarded the Island Jay matter to Novello to "handle it"—the same way that Novello was expected to "handle" similar matters. Hake Dep. at 22, 31, 36. Hake's inclination to consciously push infringement disputes onto the plate of his corporate counsel—at least some

---

³ As demonstrated by MyLocker's case law, this question generally arises in the context of alleged authorization to accept service, but the same standard applies to disputes over authorization to waive service. See, e.g., Woo v. Ochiai Georgia, LLC, No. 316-cv-00086, 2016 WL 4005831, at *2 (E.D. Tenn. July 25, 2016) (analyzing whether client "authorize[d] attorney Lee to accept service or waive service on behalf of the Defendant") (citing Arthur, 249 F. Supp. 2d at 929). An agent authorized to accept service for a corporation can properly be sent a waiver request. See Fed. R. Civ. P. 4(d)(A)(ii).

of which, like this dispute, resulted in Novello explicitly accepting or waiving service—leads this Court to conclude that Hake intended to, and did, authorize Novello to accept or waive service in this circumstance.[4]

In MyLocker's telling, Novello was a rogue agent, habitually accepting or waiving service on MyLocker's behalf without informing Hake of the lawsuits, until Hake woke up one day to a pile of default judgments. See, e.g., Def. Br. at 5–6 (stating that Hake had no knowledge of present action until January 2022). This characterization is not credible.

It is more likely than not that Hake had notice of the default in this case by September 2019. Due diligence conducted in the ordinary course of business resulted in the outstanding default being brought to MyLocker's attention—specifically, when outside counsel advising on financing MyLocker's facilities expansion flagged the default in this case. See Shield Email. Novello had actual notice of the default at that time. See id. Novello, serving as MyLocker's corporate counsel, worked on the same floor as Hake—a mere 100 feet away. See Tr. at 29, 49–50. It is not credible that Novello—assigned to "handle" these affairs on MyLocker's behalf—would not have shared the fact of a default with Hake. And the expected reaction of a CEO—

---

[4] An attorney's acceptance of service in unrelated matters and an attorney's participation in a matter prior to the filing of a complaint in that matter may not be sufficient, without more, to establish an attorney's authorization to accept or waive service for that particular case. See, e.g., Greer v. Swift, No. 3:18-cv-0394, 2018 WL 6735153, at *2 (M.D. Tenn. Nov. 16, 2018) (rejecting argument that "service on [law firm] [was] proper service on [defendant] because [law firm] ha[d] served as her counsel in other actions"); Arthur, 249 F. Supp. 2d at 929 (finding service on attorney insufficient despite plaintiff's contentions that attorney had represented defendants "in matters relating to the underlying facts of this litigation"). However, there are circumstances—like those presented here—where an attorney's participation in matters distinct from the matter in which service occurs indicates an implicit authorization to accept or waive service. See, e.g., In re Focus Media Inc., 387 F.3d 1077, 1084 (9th Cir. 2004) (finding that attorney had been implicitly authorized to accept service based on factors including participation in bankruptcy proceeding prior to suit and defendant's statement that attorney had "consulted" and "assisted" on matter); United States v. Bosurgi, 343 F. Supp. 815, 817–819 (S.D.N.Y. 1972) (finding that plaintiff's attorneys—retained to commence litigation in regard to a fund—were authorized to accept service of process in separate action related to that fund).

especially one as intelligent and business-savvy as Hake—would have been surprise and outrage if in fact he had not authorized his corporate counsel to accept service. And yet, the record contains no indication that, upon learning of the default, Hake cried foul and insisted that in this particular case—unlike multiple others—Novello was not authorized to accept or waive service for the company. Hake's failure to make this argument until 2022 when the motion to set aside the judgment was filed—over two years after the default had come to his attention—corroborates that Hake believed Novello was authorized to waive service for MyLocker.

Consistent with this conclusion is Hake's repeated testimony that he found out about the default judgment in 2020. Tr. at 30–32. While Hake claims that he misspoke and meant "2022," it is more probable that his initial testimony reflects his actual memory of learning about the default judgment at a much earlier time. When Hake was initially asked when he had become aware of the default judgment, Hake referred to another event in 2020, asserting without qualification that he was aware of the default judgment at the time Novello left MyLocker—i.e., by about August 2020. Id. at 30–31. Hake also remembered receiving a specific notice of the default judgment that Island Jay contends it mailed to MyLocker in June of 2020. See id. at 33; USPS Tracking Receipt; 6/18/20 Letter. On the basis of Hake's own testimony, it is more likely than not that Hake had actual notice of the default judgment against his company by 2020, notwithstanding his present protestations to the contrary.[5] Yet his protest that his corporate counsel lacked authority was not voiced until some two years later. This silence reaffirms the conclusion that Novello was considered an agent who was authorized to accept and waive service for the company.

---

[5] If Hake's references to the "beginning" of 2020 indicate that he had knowledge of some adverse event prior to the entry of default judgment against MyLocker on June 17, 2020, Hake may have been referring to his knowledge of the entry of default (in September 2019) rather than the default judgment—which, for the reasons explained, is equally damaging to his claim of obliviousness.

11

Additionally, Novello was not pretending to have the authority to waive service to advance his own interests; rather, he was serving the interests of his client. His decision to accept or waive service was strategic—an approach he used generally and in this case in particular. See Tr. 51–52 (reflecting Novello's testimony that he sometimes accepted service to "work out a solution" and "kind of keep the discussion going"); id. at 60 (reflecting Novello's testimony that he signed the waiver in this case "to get time to see if we could work a deal"). These facts indicate not that Novello was secretly signing waivers he had no right to sign, but that he was authorized to address legal disputes in the manner he thought best suited the company, including by executing waivers of service.

Further, Novello executed a waiver of service that he was told would be filed on the Court's docket, which it was. "A return of service generally serves as prima facie evidence that service was validly performed." Blair v. City of Worcester, 522 F.3d 105, 111, 115 (1st Cir. 2008) (directing district court to allow for discovery and hold evidentiary hearing on authorization to accept service); see also S.E.C. v. Internet Sols. for Bus. Inc., 509 F.3d 1161, 1166 (9th Cir. 2007) (affirming denial of motion to vacate default judgment and rejecting improper service argument, explaining: "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence.") (punctuation modified).

A signed waiver of service is similarly probative. The waiver executed by Novello on behalf of MyLocker "waive[s] any objections to the absence of a summons or of service" and acknowledges default judgment as a consequence of not filing an answer or Rule 12 motion. See Waiver of Service. Novello provided MyLocker's business address on the waiver. See id.; Hake Dep. at 37. He signed the form after DeLuca told him that the waiver would be filed with the Court. See DeLuca Email. He did so for the strategic purpose of expediting a resolution to the

12

dispute. Tr. at 51–52, 60. All the while, the owner of the company who referred this specific matter to Novello expected him—as usual—to "handle" it.

Several facts thus counsel in favor of finding that Novello was authorized to waive service on behalf of MyLocker for the present dispute, and the Court cannot credit the self-serving and inconsistent testimony to the contrary. Having listened to the testimony of both Novello and Hake, the Court finds their testimony in support of MyLocker's position not credible. The Court rejects MyLocker's argument that Novello was not authorized to waive service.

### B. Whether Waiver Request Violated Rule 4(d)

MyLocker also contends that the default judgment should be set aside because Island Jay's efforts to effect service and obtain a waiver of service did not comply with Rule 4. See Br. in Supp. Renewed Mot. at 12–15; Def. Proposed Findings at 15. MyLocker argues that Island Jay violated Rule 4(d)(1)(D), which requires a plaintiff to "inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service." Fed. R. Civ. P. 4(d)(1)(D). The form sent by DeLuca is an unsigned version of the waiver of service ultimately filed on the docket (Dkt. 44-3). The document sent by DeLuca includes that standard Rule 4 language under "Waiver of the Service of Summons," but not the Rule 4 language under "Notice of a Lawsuit and Request to Waive Service of Summons," including explanations for questions like, "Why are you getting this?" and "What happens next?" See Fed. R. Civ. P. 4. MyLocker also notes that DeLuca did not include the summons or a complete copy of the exhibits in his email, instead sending certain documents over Google Drive. See Br. in Supp. Mot. at 2, 12; Def. Proposed Findings at 15. MyLocker does not deny that it received all of the exhibits, but it indicates that it did not receive the summons. Br. in Supp. Mot. at 2.

"Courts construe provisions of Rule 4 liberally in order to uphold service, requiring only substantial compliance." Meyer v. Timothy E. Baxter & Assocs., P.C., No. 18-10058, 2018 WL

13

1858182, at *2 (E.D. Mich. Apr. 18, 2018) (punctuation modified). A "court is not deprived of personal jurisdiction because there is a minor defect in the process." Sanderford v. Prudential Ins. Co. of Am., 902 F.2d 897, 899–900 (11th Cir. 1990) (affirming entry of default judgment and finding service on defendant proper where service of summons was "in substantial compliance with Rule 4(b)"—at the time requiring statement in summons of time within which defendant was required to appear—because "[t]he only information omitted from the summons was the return date for the responsive pleading," which was "readily ascertainable from the Federal Rules"); see also Sacramento Area Elec. Workers Health & Welfare Tr. v. FAMCO, No. 17-cv-03823-BLF, 2019 WL 13203780, at *4 (N.D. Cal. Nov. 20, 2019) (granting motion for default judgment where plaintiff satisfied "substantial compliance with Rule 4" by issuing summons via mail and publication in newspaper).

MyLocker does not identify any cases where technical deficiencies similar to those in DeLuca's email resulted in a finding that a request to waive service was improper, and this Court is aware of none. MyLocker cites Baumer v. Bandyk, where the court found that the waiver of service violated Rule 4(d)(2)(A) because the rule explicitly required "that the notice and request [] be addressed directly to the defendant," and the plaintiff directed the notice and request to an attorney not authorized to accept service. No. 1:06-cv-573, 2006 WL 8455005, at *2–*3 (W.D. Mich. Dec. 15, 2006) (punctuation modified, emphasis in original). This particular rule is not at issue, as Rule 4(d)(2)(A) and the specific language relied on by the Baumer court are no longer in effect. Rule 4(d)(1)(A) now allows for a waiver notice and request to be addressed to any agent of a corporate defendant authorized to receive process, Fed. R. Civ. P. 4(d)(A)(ii)—and as discussed, Island Jay sent the waiver notice to Novello, an agent authorized to receive service. MyLocker's other cases—like Baumer—concern service on individuals not authorized to accept it. See Malloy v. Watchtower Bible & Tract Soc'y, No. 17-10635, 2017 WL 3727171, at *2 (E.D.

14

Mich. Aug. 30, 2017) (finding service improper where it was mailed to corporate defendant and served on individual not authorized to accept service); Davis, 2008 WL 793589, at *1 (finding service improper where it was served on non-authorized individual).

Rule 4(d) requires that a plaintiff inform the defendant of the consequences of waiver "using the form appended" to the rule. Fed. R. Civ. P. 4(d)(1)(D). DeLuca provided the form that the authorized agent was required to sign, excluding only form language explaining the meaning of a waiver. Such language was hardly necessary for Novello, an attorney who fully understood what a waiver meant, and this language was also "readily ascertainable from the Federal Rules." Sanderford, 902 F.2d at 900.

Further, Rule 4(d) does not explicitly require inclusion of the summons and all of the complaint's exhibits in the same communication as the waiver notice and request. In fact, the rule envisions that a defendant accepting a waiver request waives "service of a summons," Fed. R. Civ. P. 4(d)(1), and the form language appended to Rule 4 states that, if the defendant returns the signed waiver, "no summons will be served." Fed. R. Civ. P. 4. As to the exhibits, the Court sees no harm to MyLocker from receiving certain exhibits via Google Drive where all exhibits were made available, and other courts have found that the failure to serve the entirety of all exhibits attached to a complaint is, "at most, a mere technical violation" that does not prevent "substantial compliance with Rule 4." Oak Plaza, LLC v. Buckingham, No. cv-DKC 22-231, 2023 WL 2537661, at *6–*7 (D. Md. Mar. 16, 2023) (finding service proper where plaintiff excluded part of an exhibit) (punctuation modified). The claimed deficiencies identified by MyLocker are minor at most. The Court finds that Island Jay has substantially complied with Rule 4 in sending the waiver form to MyLocker's authorized agent.

Because service was properly waived, MyLocker has no meritorious grounds for arguing that the default judgment against it should be set aside for "excusable neglect," Fed. R. Civ. P. 60(b)(1), or on the theory that the judgment is "void," Fed. R. Civ. P. 60(b)(4).

### C. Whether United Coin Factors Favor Setting Aside Default Judgment

When a party moves to set aside a default or default judgment under Rule 55 or Rule 60(b), courts also consider "(1) whether the opposing party would be prejudiced; (2) whether the proponent had a meritorious claim or defense; and (3) whether the proponent's culpable conduct led to the default." Weiss v. St. Paul Fire & Marine Ins. Co., 283 F.3d 790, 794 (6th Cir. 2002) (citing United Coin Meter Co., Inc. v. Seaboard Coastline R.R., 705 F.2d 839 (6th Cir.1983)). Though the factors are the same under Rules 55 and 60(b), motions under Rule 60(b) are held to "stricter standards" and "requir[e] greater specificity from a moving party." Id. (punctuation modified). Rule 60(b) demands greater rigor because, "once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation." Id. (punctuation modified).

MyLocker's arguments that these factors favor its position primarily depend on its erroneous argument that service was improperly waived. MyLocker argues that Island Jay will not be prejudiced because it "improperly served MyLocker" and has already been waiting to enforce its judgment. Br. in Supp. Mot. at 4. But Island Jay would be prejudiced by the burden of relitigating a matter in which it already properly served an unresponsive defendant and obtained a default judgment. MyLocker insists it has a meritorious defense, id., and it asserts in a footnote that the Lahman Act, 15 U.S.C. § 1051 et seq. creates a rebuttable presumption in its favor on Island Jay's infringement claims, see Def. Br. at 3 n.1. This brief assertion lacks the "specificity" to move the needle in its favor. Weiss, 283 F.3d at 794 (punctuation modified). And as to culpable

16

conduct, for the reasons discussed, the Court does not credit MyLocker's assertion that "it was not properly served and was unaware of this case." Br. in Supp. Mot. at 4. To the contrary, the evidence indicates a willful disregard for the consequences of waiving service and ignoring the entries of a default and a default judgment. These factors and public policy favor upholding the finality of the default judgment entered in this case. See Weiss, 283 F.3d at 794.

### III.  CONCLUSION

For the reasons explained above, the Court denies MyLocker's motion to set aside the default judgment (Dkt. 44).

SO ORDERED.

Dated:  March 31, 2023                             s/Mark A. Goldsmith
        Detroit, Michigan                         MARK A. GOLDSMITH
                                                  United States District Judge